The plaintiff, Willie Collins, during the month of March, 1948 was employed as a common laborer by the defendant, Permanente Metals Corporation, and alleged that while so employed on April 1, 1948 he suffered an accident which rendered him totally and permanently disabled to do work of any reasonable character as a result of his accident and injury; plaintiff alleged that the accident occurred at about ten o'clock a.m. on the first day of April, 1948 when he lifted the handles of a wheelbarrow loaded with dirt, and in so doing, strained his right side causing what he later discovered to be a right inguinal hernia. He prayed for judgment against defendant and its insurer, Fireman's Fund Indemnity Company, awarding him compensation at the rate of $26.06 per week for a period of 400 weeks from April 1, 1948, with the usual interest from due date until paid and for medical expenses not to exceed $500, and all costs.
Plaintiff asked that his rate of compensation be fixed in accordance with Act 175 of 1948 although the alleged accident and injury occurred prior to the effective date of this act. He stated in his brief that the proper compensation would be $20 per week from April 1, 1948, the date of the alleged accident, to July 28, 1948, the effective date of Act 175 of 1948, and thereafter at the rate of $26.06 for a period not exceeding 400 weeks.
The defendant denied all material allegations of plaintiff's petition. In the alternative, the defendants plead unconstitutionality of Act 175 of 1948, should the Court conclude that it is applicable to the alleged accident.
The case was duly tried by the District Court, and it rendered judgment in favor of the defendants and against the plaintiff, dismissing his suit at plaintiff's cost. The District Judge in his reason stated that although he recognized that in some cases the testimony of the plaintiff alone, to the effect that he sustained an accident during the course of his employment, would suffice, provided there were sufficient corroborating circumstances to justify the *Page 325 
conclusion that in fact an accident did occur, in his opinion, such corroborating circumstances did not appear in this case and for him to say that the plaintiff suffered an accident as alleged would be merely a guess. The main question in this case is whether the plaintiff has proven that he suffered an accident while in the employ of the defendant which caused the alleged hernia.
The testimony reveals that the plaintiff was first employed during March, 1948 by the defendant and that he took a preemployment physical examination given by Dr. Charles McVea, who at that time found the plaintiff fit for employment with no disabling physical findings. Dr. McVea specifically stated that he had no hernia at that time. The plaintiff on April 1st, together with a co-laborer, Willie Parker, was given the assignment of moving some dirt from the front of what was known as the Administration Building, as the defendant company was beautifying its grounds and wished to clean out its flower beds by raking rocks therefrom and thereafter to move some dirt into a hole in the parking lot. The plaintiff and Willie Parker were each furnished with a shovel and a wheelbarrow. Plaintiff said that he raised the handles of a wheelbarrow full of dirt about ten o'clock a.m. and he "felt my right side strain during the time I was rolling the wheelbarrow, I felt my right side strain but I didn't take it serious. I stopped for about ten minutes and then I went back to work." He stated that he did not have any pain at the time, only felt kind of sick. He did not report the occurrence to the company officials or anyone at the plant but he states that he told his mother about it when he went home that afternoon at approximately four o'clock. He came back to the defendant company's plant on April 2nd and voluntarily quit work, not because of any injury but because he was dissatisfied with the work time given him for he thought that the company owed him for more hours than he was paid. He was unemployed after April 2, 1948 but during the last part of May, 1948 he applied for another job with the Dixie Electric Company and was required to submit to a preemployment physical examination which was made on May 25, 1948 by Dr. James R. Godfrey of Baton Rouge, who discovered that the plaintiff had a small right inguinal hernia and was, therefore, rejected for employment. He immediately contacted his present counsel and upon a refusal of his demands for compensation, the present suit was instituted.
It is shown that on April 1st the plaintiff had his duties outlined to him by a Mr. B. V. Bannister, Jr., who was the Safety Supervisor of the defendant company, and that the plaintiff had reported to him at around seven thirty a.m. and after the shovels and wheelbarrows had been obtained, which was approximately eight o'clock, Bannister showed the plaintiff and his fellow laborer, Willie Parker, what he wanted them to do and they began to rake rocks from the rose beds; that about eight thirty or a quarter of nine Collins left his work and went to Bannister with a complaint that he was two days short in his pay check. Bannister said that he discussed the matter with him and then sent him to a Mr. Mervin Lowden, who is the paymaster for the company, and that he did not see Collins again until about a quarter of twelve when he reported back to him for work, and the plaintiff told him at that time that he had been down to Mr. C. F. Woods' office, who occupied the position of Clerk and Production, and also to Mr. Vernon Huddleston, who was dock superintendent, and to the paymaster, Mr. Lowden, in an effort to check on his time which he claimed was short. Bannister said that the employees had thirty minutes for lunch and that Collins worked on the flower beds that afternoon until sometime shortly after three p.m., when he came in to resign as he felt he had been "shorted" two day's pay, but that as it was too late in the afternoon to get a termination, according to the rules of the company, Bannister asked the plaintiff to come back the next morning in order to fix up his termination. Bannister stated that he recalled all of these incidents so well because on that day Collins was working directly for him on *Page 326 
this particular project which he was superintending and that Parker and Collins did not move any of the dirt; in fact, they just got the rocks out of the flower beds. He is positive that Collins never loaded a wheelbarrow with any dirt that day, nor did he load any rocks. It is his positive testimony that he had the dirt moved the next day. Bannister checked the job twice during the afternoon and was positive that there was no dirt hauled as he had to have two men move it the next day. The defendant also offered the testimony of Mervin W. Lowden who was employed in the payroll department, Mr. C. F. Woods who was employed in the Production Superintendent's office, and also Vernon Huddleston, dock foreman, all of whom testified that the plaintiff came to see them on the date of his alleged accident, in an attempt to straighten out his complaint about his time being short. Lowden said that he last saw the plaintiff between 9:15 and 9:30 a.m. Woods testified that he came to his office between 9:00 and 9:15; that he sent him to the payroll office and that he returned fifteen or twenty minutes, possibly half an hour, later, which would be at approximately 9:30. He sent him to see Mr. Huddleston, the dock superintendent, and plaintiff, after seeing the dock superintendent, returned to his office between 10:30 and quarter of eleven o'clock. Taking the defendant's testimony, from a quarter of eleven to a quarter of twelve the plaintiff's actions were unaccounted for, as he reported for work at approximately a quarter of twelve. The plaintiff made no complaint to any of the various officials he saw that morning as to having suffered any accident or felt any strain. Willie Parker, who was assigned to the same duty as the plaintiff on April 1, 1948, testified that the plaintiff started to work separating "some gravel from some dirt" but that shortly after he had started to work he told Parker that he had to go down to Mr. Woods' office to see about his time and that he was gone "about an hour or so." He said that Willie Collins did not have an accident of any kind that he knew of that day, nor did he complain at all to him about straining himself; however, Parker did testify that he and Willie Collins hauled dirt in the wheelbarrow on that day. He stated that Collins hauled the dirt after he came back from checking on his time. Parker did not see the plaintiff sit down and rest for ten minutes at any time during that day, and he was working within eight feet of him. Parker further stated that the plaintiff had returned from seeing Mr. Woods and was working with him at about ten o'clock, which is the time plaintiff claims to have strained himself. Parker is evidently mistaken in his testimony that the plaintiff returned to work at approximately ten o'clock, for we have the positive testimony of the three responsible employees of the defendant company which definitely established that the plaintiff left his work between eight thirty and a quarter of nine and traveled back and forth between various offices until approximately a quarter of eleven and finally returned to this work at approximately a quarter of twelve. Taking into consideration the number of trips and estimated distances between the various offices that Collins visited, beginning at eight thirty or a quarter of nine A.M. on April 1st, we believe these facts are corroborative of the testimony of Bannister, Lowden, Woods and Huddleston. In addition to this testimony, the record reveals that the plaintiff on April 2nd, when he was going through the formality of resigning, in response to a question of an employee of the defendant company as to whether he had had any accident while working for the defendant company or suffered any injuries, stated that he had had none.
Plaintiff offered the testimony of his mother, Emma J. Collins, who testified that when the plaintiff came home at about four o'clock he told her that he had "over strained his side" and that it still hurt him after he got home; that he was kind of sick at the stomach and the next day he said his side was sore and that he had complained right along with his side and had, even up to the date of the trial on November 24, 1948. The plaintiff's mother also testified that he went to bed that night; *Page 327 
whereas the plaintiff himself positively testified that he went to a picture show.
The plaintiff's father testified on direct examination that his son did not complain to him about an accident, but that he told his mother and his mother told him. On cross examination he changed his testimony and stated that plaintiff told him how he strained himself.
In addition to these witnesses, the plaintiff places great faith in the testimony of Dr. James R. Godfrey who testified that he examined the plaintiff on May 25th, 1948 and discovered a small hernia and that out of curiosity he asked plaintiff when he had developed this hernia and plaintiff stated "that the only time he knew of when he might have received it was a number of weeks before when he had been straining at a wheelbarrow and felt a pain in his right side, but he thought no more of it as the pain passed off after some few days and he ignored the incident."
Counsel for plaintiff contended that although there is no witness other than the plaintiff to the accident, there are sufficient corroborating circumstances to justify judgment in favor of the plaintiff. As we view the case, the defendant has practically proven that the plaintiff did not suffer any accident at ten a.m. on April 1st as he claimed, for he was not working at that hour, and that he did not suffer any accident at all as a result of moving any dirt in a wheelbarrow, as we believe the testimony of Bannister that he did not move any dirt, despite the testimony of Willie Parker to the contrary. Furthermore, the defendants have proven and the plaintiff admitted that he made no complaint to any employee of the defendant that he had suffered an accident, and when he stopped working for the defendant on the following morning he stated that he had suffered no accidents nor injuries while in the employ of the defendant. We also have the positive testimony of Willie Parker, who was working close to the plaintiff on that day, that if he suffered an accident he knew nothing about it. In other words, the plaintiff exhibited no signs of having suffered an accident and made no statement to him that he had strained himself or that he felt sick and, in fact, Parker testified that he did not remember plaintiff sitting down and resting for ten minutes as plaintiff said he did. The plaintiff attempted to escape the effect of these damaging facts and circumstances by saying that he did not think that his injury was serious. Dr. Godfrey testified that the symptoms of a hernia which is received abruptly are usually pain in the region, sometimes nausea, and if it was a very small hernia that can be all, and that a strain causing the kind of hernia which the plaintiff had when he examined him, he would have expected him to have felt the usual nausea and pain attendant to such a hernia. He stated that the nausea usually passes off in a matter of a few hours, if it is present at all, and that sometimes it is not present and the pain will pass off anywhere from two or three days to around two weeks.
Dr. McVea testified that he thought it was probable that an individual who sustained a strain or injury severe enough to cause a hernia would be aware of something wrong with him immediately following such a strain, but that he did not know whether the symptoms of a hernia resulting from a strain would have subsided within a ten minute period after the incident occurred, as that would depend on how much tearing of tissue was associated with the strain and how much pain the man experienced at the time. He did positively state, however, that in his opinion if a man had an injury severe enough to produce a hernia which could be found on an examination where no hernia existed before, he believed the man would have considerable pain and distress which probably would last several hours or a day or so. Therefore, it is difficult for us to believe that the plaintiff injured himself as he contended.
Counsel for plaintiff contended that there were corroborating circumstances which sustained plaintiff's testimony and entitled him to recover. We believe that even if this be true, the weight and preponderance of the testimony is to the effect that plaintiff *Page 328 
did not suffer an accident on the date alleged and, therefore, any corroborating circumstances are not sufficient in the face of direct evidence to the contrary.
It is therefore ordered that the judgment of the District Court be affirmed.