DORÉ, Judge.
This is a suit for workmen’s compensation wherein the plaintiff-appellant, Louis Ike, Jr., alleges that while in the scope and course of his employment 'by A. P. Johnston, Contractor, he sustained an accident which produced a left inguinal hernia, permanently and totally disabling him from doing work of a reasonable character. He specifically alleges that the accident occurred on June 19, 1950 and that on this date while pushing a heavy wheelbarrow loaded with wet cement on a runway, the wheelbarrow broke through the runway causing the wheelbarrow handle to fly up, striking petitioner in his stomach and the lower part of his abdomen and resulting in the inguinal hernia complained of herein. He sues his employer and his employer’s insurer for total permanent disability, alleging that his compensation rate should be $24.99 per week, beginning June 19, 1950, for a period not to exceed 400 weeks, and prays for the additional sum of $500, or so much thereof as may be necessary, as medical, hospital, drug and surgical expenses.
The respondents filed a joint answer wherein it is admitted that A. P. Johnston was the employer of plaintiff at the time of his alleged injury and that Coal Operators Cas. Co. was the workmen’s compensation insurance -carrier for respondent at that time. They deny, however, that plaintiff sustained any accidental injury while in the employ of A. P. Johnston and, on information and -belief, allege that petitioner has a small left inguinal hernia but that said hernia was in existence long before petitioner’s employment with respondent, A. P. Johnston, and is in no way connected with petitioner’s employment with said A. P. Johnston. They further allege that petitioner is now as fully capable of performing manual labor as he was when he reported to respondent A. P. Johnston for employment on or about June 13,, 1950.
After trial of the case, the trial judge* for written reasons assigned, came to the conclusion that plaintiff had failed to establish with the degree of certainty required by law that he suffered a hernia while in the employment of the defendant Johnston,, and rendered judgment for defendants, dismissing plaintiff’s suit. The plaintiff has. appealed.
The sole question before this court is. whether or not the trial judge committed any manifest error in his conclusion of fact.
It is clearly shown by the record that the plaintiff is a common laborer and that prior to his alleged accident he had engaged' in heavy manual labor and that in the particular job with A. P. Johnston, which he began on June 13, 1950, his work consisted primarily of pushing a wheelbarrow loaded with wet cement from a cement mixer to-various portions of a bridge where concrete was being poured and at other times, in moving bridge timbers in preparation, for the pouring of concrete.
Plaintiff testifies that his accident occurred on Monday, June 19, 1950 between eleven and twelve o’clock and upon being questioned with reference to the actual accident, testified as follows:
“Q. Louis, just tell the Court what took place on the job on the day that you claim you were injured. A. Just what took place, I was rolling a wheelbarrow full of wet cement. We had about a six-foot in diameter incline going down a hill to .a plank walk to go across the tie on this side, and while going across there my wheel *23 hit a 'bump and it fell into a slot down in the runway and it run through and the left handle hit me in the left groin.
“Q. What did you say that wheelbarrow was loaded with? A. Wet cement.
“Q. What sensation or feeling, if any, did you have after that wheelbarrow handle hit you in the groin? A. After then the rain was coming up and they told me to go move my car off the fill — they were pouring dirt there. I went and moved my car. While I was moving the car, the rain came up. I didn’t get back out of the car; I sat in the car, and I began to feel a sensation of pain going in my stomach on the left side and I got sick at the stomach.”
It will be noted that he does not state that he suffered any pain or nausea immediately after being struck by the wheelbarrow handle but he does state that some minutes later, 15 or 20 minutes later according to his testimony, he began to have a sensation of pain and nausea. The fact remains, however, that he did not at that time make any complaint of any accident and there is no testimony in the record that anyone present saw the alleged accident.. There were some fourteen employees working on this bridge including five or six employees rolling cement in wheelbarrows and none of these could testify that the accident occurred.
The work was stopped right after the time of the alleged accident because of rain and was not resumed until the following Friday. On the next day the plaintiff applied for work with the Schuylkill Products Corporation, commonly called,the "lead plant”, and they sent him to Dr. Clarence A. Lorio for a pre-employment examination. Dr. Lorio upon examining plaintiff found that he had a small inguinal hernia in the left region and turned him down for employment. Dr. Lorio testified further that the hernia was congenital and that it was reducible.
On the following Friday, plaintiff returned to work for the defendant, Johnston, hut was a few minutes late and his foreman after reprimanding him for being late and after some discussion with plaintiff, discharged him from his job. Up to that time the plaintiff had made no complaint to -his foreman of any injury on the job, but when he went to see the General Superintendent, Mr. Brown, for his pay, he. informed Mr. Brown that he had been hurt on the job and wanted to be examined ¡by a doctor; that thereupon Mr. Brown sent him to a Dr. Morris who diagnosed plaintiff as suffering from a left inguinal hernia and gave him a slip to go to Charity Hospital to get it repaired.
Plaintiff admits in his testimony that since his alleged accident he has worked at various times at practically the same wage scale that he made with defendant, Johnston,1 but contends that he has been forced to do light work only, because of his physical condition. One of these jobs was for Permanente Metals Corporation, who gave him a pre-employment examination by Dr. Louis Mayer, which doctor found him to be in good physical condition and approved him for heavy manual work. At the time of the trial the plaintiff had been and was then employed by a Mr. Henderson who operates a filling station. Henderson testified that plaintiff did all types of general work around the filling station but that none of such work was’ particularly heavy, consisting mainly of washing, greasing and servicing automobiles, including the changing of tires on passenger automobiles.
Besides being examined by Dr. Lorio, Dr. Morris and Dr. Mayer, plaintiff was also examined by Dr. Charles McVea and Dr. Jerome F. Tanna at the request of defendants.
Dr. McVea found that the plaintiff was suffering from a small reducible left inguinal hernia. Dr. McVea testified that the opening was quite small through which the protrusion comes and it was quite possible that a doctor could examine him and not find it. He stated that plaintiff’s hernia was of the congenital type which .results from a defect which is in existence at birth. He distinguished this from a traumatic hernia which results directly from a trauma which immediately breaks the tissue.
*24 Dr. Tanna examined plaintiff on the afternoon prior to his testimony and stated as follows: “I concentrated my examination at his chief point of complaint, namely, the left inguinal region, with the idea in mind of trying to determine whether or not this individual had a hernia, and at the time of my examination yesterday afternoon I could not find a hernia in this individual.”
It will be noted that three of the physicians who examined plaintiff, to-wit, Dr. Lorio, Dr. Morris and Dr. McVea found that he had a small left inguinal hernia which in their opinion was congenital and that the other two examining physicians, Dr. Mayer and Dr. Tanna, failed to find any hernia whatsoever. He was examined by Dr. Lorio the day after his alleged accident and by Dr. Morris some three days after the alleged accident and although he gave a history of having been struck in the groin by the wheelbarrow handle, neither of these doctors found any evidence -of damage to the tissue such as bruises, indicating that he was in fact struck a violent blow.
We agree with the lower court that based upon all the testimony the plaintiff appears to be suffering from a small left reducible inguinal hernia and that the main question involved is whether or not the plaintiff has proven that the hernia from which he is suffering occurred while in the employment of the defendant, Johnston.
The only testimony in the record that this hernia could have been caused by the alleged accident is that of plaintiff himself. In his testimony he stated, in effect, that the accident was seen by two fellow employees, namely, Willie Baker and Mack Hill, and these two witnesses were called by plaintiff and both testified that they did not see any accident happen. It is true that they both testified that he was rolling a wheelbarrow filled with wet cement, which fact is not disputed. Mack Hill testified that as some indefinite time plaintiff said he got hurt on the job. He states: “That is what he said, but for me knowing that he got hurt or not knowing I don’t know whether he got hurt or didn’t, but he said he got hurt.”
On the other hand the defendants introduced the testimony of several employees of defendant Johnston, who testified that they were working near the plaintiff at the time of his alleged accident and that they did not see any accident occur or hear any complaint made by the plaintiff. It appears' particularly significant that William Barnett, the foreman of the crew, who was present at all times, and fired the plaintiff on the Friday morning following the Monday when the accident is alleged to have occurred, knew nothing of it until after plaintiff reported to the General Superintendent, Mr. Brown, and asked to be examined. At that time it will be noted that plaintiff already knew that he had a hernia because of his pre-employment examination by Dr. Lorio.
This case is very similar to the case of Knox v. Ethyl Corp., La.App., 53 So.2d 443 and the case of Collins v. Permanente Metals Corporation, La.App., 42 So.2d 324. In both of these cases it was concluded by the trial courts and by our court that the plaintiff was suffering from a small inguinal hernia but as concluded by the trial judge in the case at bar, although it has been recognized that in some cases the testimony of the plaintiff alone, to the effect that he sustained an accident during the course of his employment, would suffice, provided there were sufficient corroborating circumstances to justify the conclusion that in fact an accident did occur, such corroborating circumstances did not appear in the cited cases as well as in the case at bar and to say that the plaintiff suffered an accident as alleged would be merely a guess. In the case at bar, the surrounding circumstances, such as the fact that the physicians who examined plaintiff shortly after his alleged accident failed to find any evidence of trauma, and the further fact that plaintiff failed to complain of any accident until several days after the alleged accident, are more to the effect that no accident occurred, rather than in corroboration of plaintiff’s testimony.
Our conclusion is that the trial judge is entirely correct in his opinion that plaintiff has failed to establish with the degree of certainty required by law that *25 he suffered a hernia ■resulting' from an accident while in the course and scope of his employment by the defendant Johnston.
For these reasons, the judgment appealed from is affirmed.