59 So.2d 505 (1952)
TROQUILLE
v.
LACAZE'S ESTATE
No. 7817.
Court of Appeal of Louisiana, Second Circuit.
June 18, 1952.
Rehearing Denied July 7, 1952.
*506 Gravel & Downs, E. M. Nichols, Alexandria, for appellant.
Russell E. Gahagan, Natchitoches, for appellee.
HARDY, Judge.
This is a compensation suit in which plaintiff seeks to recover for permanent and total disability while in the employ of defendant estate. After trial there was judgment rejecting plaintiff's demands, from which he prosecutes this appeal.
Before proceeding to a discussion of the questions involved we feel constrained to comment, with enthusiastic approbation, upon the conduct of the trial of this case and the clear-cut presentation of the issues involved, as reflected by the record before us, for consideration. Counsel for the parties litigant, by stipulation, restricted the issues upon trial of the cause, and, in briefs, have confined themselves to a discussion of the precise questions of law which are here tendered. We feel that we would indeed be insensible to a proper feeling of gratitude if we did not here take opportunity to express the appreciation of this Court.
The two questions which are before us for determination, involving points of law which have been concisely stated by counsel for both parties, may be summarized as follows:
1. Was the defendant estate, at the time of the accident and injury, engaged in a hazardous occupation or business within the contemplation and coverage of the Workman's Compensation Statute?
2. If so, what is the rate of compensation to which plaintiff is entitled?
The essential facts bearing upon a consideration of the questions of law above stated, which have been clearly established, may be briefly set forth. The defendant estate is engaged, among other enterprises, in the operation of two large plantation holdings in Natchitoches Parish, Louisiana, and, in connection therewith, the operation of a general mercantile store located in the town of Cloutierville. On its farm properties defendant maintains a large number of tenant houses for the use and benefit of its tenants who farm the properties on shares or for money rent. Plaintiff, a carpenter by trade, was employed by the defendant estate, as and when the need occasioned, for the purpose of doing carpenter work in repairing buildings and conducting building operations. Additionally, he did the same nature of work for *507 individuals in the employ of the estate and for outsiders who had no connection with defendant. It appears that the estate at times had a regular crew of carpenters or construction workers, and at other times employed the services only of plaintiff and another helper. But, unquestionably, plaintiff, as described in the words of the then overseer of the plantation at the time of the accident, "was the leader and manager of the carpenter crew."
On September 27, 1950, while engaged in demolishing a tenant house of one McKinley Rachal, a share-cropper on defendant's "Marco" plantation, plaintiff sustained a fall which resulted in the fracture of the neck of the right femur. The resulting injuries completely disabled plaintiff and at time of trial, in September 1951, he was totally disabled. Prognosis of the examining physicians was uncertain. However, for the purposes of the proposition submitted, it is to be considered that plaintiff, if entitled to any recovery, must be regarded as having sustained total and permanent disability.
Concededly, defendant employed a number of motor vehicles, trucks, tractors, combines, etc. in the prosecution of its farming operations. Among other vehicles according to the testimony of the manager of the estate, was what was called a "carpenter truck" which was used for the transportation of carpenters and their tools, together with the hauling of materials and necessary supplies to and from the site of work. It is established that among other duties, if and when the truck was available, it was driven by plaintiff to and from work. However, on the job in which he was engaged at the time of the accident, and with which he had been occupied for the two preceding days, plaintiff was driving his own automobile, having been informed by the defendant's manager that all of his trucks were employed and in use in plantation operations. It is also established that defendant allowed plaintiff $1 per day to cover the cost of the operation of his own automobile in connection with the particular work in which he was engaged at the time.
We concede, as a general proposition, that the occupation of farming is not, per se, hazardous under the Workmen's Compensation Statute, LSA-R.S. 23:1021 et seq. But we call attention to the fact that the non-hazardous classification of this occupation or pursuit is undergoing steady and substantial encroachment upon such status by reason of the rapid march of progress in connection with farming operations, particularly in the use of motorized vehicles, etc. But the classification of a business is not in itself determinative of the question with which we are here concerned. A business may be classified as non-hazardous but its operation may involve what has been called "hazardous features", and an employee engaged in the performance of duties requiring him to come in contact with such hazardous features is entitled to recovery of compensation, Storm v. Johnson, La.App., 23 So.2d 639; Rigsby v. John W. Clark Lumber Co., La.App., 28 So.2d 346. Obviously we are here dealing with a proposition which concerns the non-hazardous business of the defendant estate (farming) and yet which has, or possesses, certain hazardous features, namely the operation of motor driven vehicles. For we regard it as now being well established that an employment or duties requiring the necessity of operation of motor driven vehicles bring an employee so engaged within the purview of the statute. Richardson v. American Employers Insurance Co., La.App., 31 So.2d 527; Reagor v. First National Life Insurance Co., 212 La. 789, 33 So.2d 521.
It is argued that plaintiff's use, on occasions, of the truck belonging to the defendant was permissive in nature and was not a necessity. Similarly his use of his own automobile, as at the time of the injury which is the basis of this action, is considered to be purely a matter of convenience. We think it is implicit in the record of this case that the furnishing of a truck by defendant was not designed solely for the convenience of plaintiff and his coworkers on the occasions when need demanded or required construction and repair of buildings on defendant's plantation, *508 for certainly, it was an equal convenience to defendant itself. It would be specious to contend that workmen should travel or that tools and materials and supplies should be transported by some other method than in an automotive vehicle. Additionally we point out the fact that the denomination of the vehicle owned by defendant as the "carpenter's truck" militates strongly against the reasonableness of a conclusion that it was simply a vehicle furnished as a matter of convenience. It appears to us, without question, that this was a specific vehicle designed, denominated and used for the performance of particular duties in connection with the repair, construction and maintenance of tenant houses on defendant's properties.
We are further of the opinion in the instant case, notwithstanding the non-hazardous classification of the occupation or pursuit of farming, that the maintenance, repair, demolition and construction of large numbers of structures or buildings is an additionally hazardous feature of the principal pursuit or occupation. In other words, the maintenance of some ninety tenant houses, more or less, in defendant's farming operations, as an adjunct thereto, constitutes, in our opinion, an additional hazardous feature. We have recently had occasion to consider this identical question at some length and our conclusions and reasons therefor are set forth in the case of Speed v. Page, La.App., 59 So.2d 138, rehearing refused June 2, 1952. In the course of our opinion we made the following observation which we think appropriate to the question here under consideration:
"* * * it is our conception of the statute that it is intended to protect the right of an employee when he is engaged in an employment with refererence to, in connection with, incident to or in promotion of the employer's trade, business or occupation."
We think it is clear that plaintiff's duties which required or embraced and comprehended the operation of a motor vehicle, either a truck belonging to defendant or his own automobile, for the operation of which he was reimbursed by defendant, and his occupation in connection with building operations which were an integral part of defendant's business, bring him within the protection of the statute.
On the question as to the basis of compensation, it is contended on behalf of the plaintiff that he worked nine hours a day for five or six days per week at a rate of seventy-five cents per hour and, as a result, is entitled to compensation on the basis of a six day week of nine hours per day, which would amount to $26.33 per week. We concede the pertinency of those authorities indicating the right to compensation based upon a six-day week, but under the particular and peculiar circumstances and facts of the case before us we do not regard them as being applicable. Plaintiff did not work any regular number of hours per day nor any fixed number of days per week. His employment was of such nature and character that he appears to have worked as and when the work was necessary, or, perhaps, as he pleased, both with respect to the hours per day and the number of days per week. Examination of defendant's time books discloses that in the year 1949 plaintiff's average weekly wage was $30 and in 1950 was $30.93. We think in all fairness, under the circumstances, that the contention of defendant that compensation be fixed at 65% of $30.93, that is upon the basis of an award of $20.11 per week, would do justice.
For the reasons assigned the judgment appealed from is reversed and set aside and there is now judgment in favor of plaintiff, Mitchell Troquille, and against the defendant, Mrs. Mazie Lacaze, as Administrator of the Estate of Sam Lacaze, at the rate of $20.11 per week, beginning September 27, 1950, during the period of plaintiff's disability, not exceeding 400 weeks, with legal interest thereon on all past due installments until paid.
There is further judgment in favor of plaintiff and against the said defendant in the sum of $500.00 for medical expenses, together with all costs.
GLADNEY, J., concurs in the result.