McINNIS, Judge.
This is a compensation suit against Earl Millen, a contractor, and his insurer, Hartford Accident & Indemnity Company, and J. W. Hosier. The demand was originally for compensation at the rate of $30 a week for not exceeding 400 weeks, and for $500 for 'hospital and medical expenses. On trial of the case it was stipulated that plaintiff was fully recovered as of September 29, 1952. Pie was injured February 7, 1952.
The claim arose in the following manner : Defendant J. W. Hosier had employed Earl Millen to do some clearing by means of the use of a bulldozer. Some of the stumps were large and had been cut near the ground, and some of the trees were too large for the bulldozer to handle, and Mil-len suggested that they be uprooted by shooting them with dynamite, and at Hosier’s request, Millen contacted W. T. Bullock at Minden and told him about the j ob, and next morning Bullock went to the place where the work was to be done, taking with him the plaintiff and Roswell Edam, both colored men. On the way Bullock secured some dynamite, which was charged to Millen and for which Hosier later paid Millen. Millen and Hosier were together at the farm where the work was-to be done, and the record shows that Mil-len told Hosier to make his trade with Bullock to do the dynamiting, that he, Millen, did not want to have anything to do with it.
It afterward developed that the work was done on a farm belonging to a Mrs. Ethridge and her children. She operated’ a camp on Lake Bistineau for Hosier. During the life of her husband he had mortgaged the farm and Hosier had endorsed the notes to the amount of $20,000. It appears that neither Millen nor Bullock learned about the ownership of the property until the work was in progress, and they apparently did not know the relationship of Mr. Hosier with Mrs. Ethridge.. He probably was protecting his interest *382 as indorser of the notes, however he said he would like to have the place, but he wouldn’t take it away from the widow and children. According to Mr. Hosier, Mrs. Ethridge knows nothing about farming and he was doing what he could to help her.
After trial on the merits plaintiff’s demand against all defendants was rejected, and plaintiff is prosecuting a devolutive appeal.
Apparently the demand against Millen and his insurer has been abandoned. These defendants are not mentioned in plaintiff’s brief.
Mr. Hosier owns about 2000 acres of land further south than the land of Mrs. Eth-ridge, and is engaged in cattle raising and farming operations generally.
There is little difference in the several versions of the agreement between Mr. Hosier and Mr. Bullock. They both agree that the pay of Bullock was to be $20 a day. Mr. Hosier thinks the colored men were to be paid 75 cents an hour, and Bullock says the rate of pay was to be $1 an hour. Counsel for Mr. Hosier says in brief that their pay was to be $1 an hour.
The district judge found in favor of Hosier because he reasoned that blasting stumps by the use of dynamite is not a common means of clearing land for farming and it could not be said that Mr. Hosier would himself use dynamite to clear land, and that he could contract away such a highly specialized job without becoming liable under the compensation law.
We said in Speed v. Page, 59 So.2d 138, 142:
“In conclusion we point out that in our opinion the compensation statute does not purport to restrict the right of an employee’s recovery to those instances in which the injury is sustained in the performance of the regular course of the employer’s business, trade ■or occupation. Quite to the contrary it is our conception of the statute that it is intended to protect the right of an employee when he is engaged in an employment with reference tO', in connection with, incident to or in promotion of the employer’s trade, business or occupation. If we are correct in this conclusion there can remain no doubt as to plaintiff’s right to recovery.”
This is not a farming case, but we are unable to determine any difference. Page was in the business of operating moving picture shows. One of his theatre buildings was badly damaged by fire and he engaged a contractor to rebuild it, but employed Speed to work in cleaning up the premises.
In Troquille v. Lacaze’s Estate, La.App., 59 So.2d 505, 507, we considered the compensation claim of plaintiff, who was injured while working as a carpenter on a plantation, which carried on farming and mercantile operations, and owned a large number of tenant houses that had to be kept in repair. Sometimes one would have to be demolished, and it was while demolishing one of them that plaintiff was injured. Plaintiff also drove a truck to his work as a carpenter, at times, but on the day he was injured he was driving his own automobile, for the use of which he was allowed $1 per day. He was awarded judgment in this court.
It has never been held that farming is per se hazardous We said in the last-cited case:
“A business may be classified as nonhazardous but its operation may involve what has been called ‘hazardous features’, and an employee engaged in the performance of duties requiring him to come in contact with such hazardous features is entitled to recovery of compensation, Storm v. Johnson, La.App., 23 So.2d 639; Rigsby v. John W. Clark Lumber Company, La.App., 28 So.2d 346.”
We conclude after review of all the testimony, including that of Mr. Hosier, that he was either acting as agent for an undisclosed principal, or in his own interest, or he was an intermeddler. We do not believe we are required to decide which one of these positions he occupied. He is the employer; of this there can be no doubt. He made the trade with Bullock, and paid him when the work was com *383 pleted. He pointed out the stumps and trees to be blown up with dynamite.
It is immaterial whether it is unusual to clear land for cultivation by the use of dynamite. It was done in this case. It is hazardous. Plaintiff was injured by a piece of a stump being blown against him when one of the stumps was blown out of the ground.
Plaintiff’s injuries consisted of a comminuted fracture of the shaft of the left humerus and a fracture of the distal one-third of the right first metatarsal. He was hospitalized and treated by Doctors D. F. Overdyke and Ford Macpherson. The hospital bill was $318.10 and the doctors’ bill $417.50. He was disabled for 33 weeks. We believe his weekly wage is established as $40, which fixes his rate.of compensation at $26.
For the foregoing reasons, the judgment appealed from in so far as it is in favor of Earl Millen and his insurer Hartford Accident & Indemnity Company, is affirmed. In so far as it is in favor of defendant J. W. Hosier, it is reversed, and it is now ordered, adjudged and decreed that there be judgment in favor of plaintiff Ernest Crow and against defendant J. W. Hosier, awarding plaintiff compensation at the rate of $26 per week for 33 weeks, beginning February 7, 1952 and ending September 29, 1952, with 5% per annum interest on past-due payments, and awarding his attorneys, Booth, Lockard & Jack, 20% of the amount recovered, as their fee, and in the further sum of $500 for hospital and medical expense. All costs to be paid by defendant-appellee, J. W. Hosier.