84 So.2d 469 (1955)
Maurice (Morris) ROY, Plaintiff-Appellant,
v.
Clemille GUILLOT, Defendant-Appellee.
No. 8311.
Court of Appeal of Louisiana, Second Circuit.
May 18, 1955.
On Rehearing January 9, 1956.
Writ of Certiorari Denied February 23, 1956.
*470 Coco & Bennett, Marksville, for appellant.
Earl Edwards, Marksville, for appellee.
AYRES, Judge.
Plaintiff instituted this action against the defendant for workmen's compensation at the rate of $16.25 per week as for total and permanent disability and for medical expenses as the result of an accident allegedly sustained by him on or about October 9, 1953, while in the employ of the defendant.
Specifically, plaintiff alleged that on the aforesaid date, while operating and driving a tractor in "snaking" and bunching logs in defendant's logging operations, he suffered a sharp pain in his back while attempting to roll a log with a cant hook. The movement caused the weight of the log to fall on plaintiff, against the weight of which he strained to prevent being crushed by the log and cant hook, which accident produced *471 a sub-acute lumbosacral strain and disc injury in the area of the fourth and fifth vertebra. On account of said accident and injury, plaintiff further alleged that he was totally and permanently incapacitated to do work of the same or similar character, and that he is, therefore, totally and permanently disabled within the terms of the Workmen's Compensation Statute, LSA-R.S. 23:1021 et seq.
Defendant, for answer to plaintiff's demands, admitted plaintiff's employment but denied that an accident occurred or that plaintiff was injured while in his employ, and alleged that if plaintiff sustained an injury such was not incurred while in his employ. Defendant further contended that he is a farmer by trade and occupation; that plaintiff's employment with defendant was farm work, not hazardous by nature or made such by the Workmen's Compensation Statute and, therefore, whatever injuries, if any, sustained by plaintiff where not compensable.
From an adverse judgment, plaintiff appealed.
The question first presented for determination is whether or not plaintiff's employment was covered by the Compensation Statute, or, in other words, whether defendant's trade, business or occupation is hazardous within the purview of the Statute. Defendant owns and operates a farm of several hundred acres, the operation of which is largely mechanized. He raises corn, hay and cattle. The machinery consists of a tractor, hay press, mowing machine and truck. For approximately 8 years plaintiff was employed by defendant to do general work in connection with defendant's farm and cattle raising. He operated the tractor and other power mechanical equipment. At the time of the alleged accident, saw logs had been cut from timber located in defendant's pasture, and plaintiff and another employee were engaged in snaking or bunching these logs for removal by trucks to a sawmill. Plaintiff was driving and operating the tractor used in the aforesaid operation.
Under the facts and circumstances above detailed, defendant's contention that he was not engaged in a hazardous occupation or that plaintiff's work was not hazardous can not be sustained. As was recently stated by this court in Norris v. Hargis, La.App., 77 So.2d 60, 61:
"It is well settled in our jurisprudence that although a business is not specifically designated as hazardous in the Workmen's Compensation Act, it becomes hazardous if motor vehicles or other mechanical equipment are used in connection with its operations. Thus, in Speed v. Page, La.App. 1952, 59 So. 2d 138, affirmed 222 La. 529, 62 So.2d 824, it was held that the provisions of the Act were intended to protect an employee when he is engaged in employment with reference to, in connection with, incident to, or in promotion of, his employer's trade, business or occupation, and it was not intended that the employee's right of recovery be restricted to those instances in which injury was sustained in the performance of the regular course of the employer's business, trade or occupation. See also: Collins v. Spielman, 1942, 200 La. 586, 8 So.2d 608; Griffin v. Catherine Sugar Co., Inc., 1951, 219 La. 846, 54 So.2d 121; Troquille v. Lacaze's Estate, La.App. 1952, 59 So.2d 505",
the conclusion is inevitable that if plaintiff sustained an accident such occurred within the scope of the Workmen's Compensation Act.
Next, logically in order for determination, is the question of whether or not plaintiff experienced an accident. The trial court held that plaintiff had not sustained his burden of proof to that degree of legal certainty and by preponderance of the evidence, as required by law. In support of its conclusion, the court cited factors which in its opinion militated against plaintiff's claims, such as contradictions of a fellow employee, the tardiness in seeking medical attention, and the circumstance *472 of continuing work for several weeks subsequent to the accident, as well as to the uncertainty as to the time the work was performed in which plaintiff claimed to have been injured, and his activities following his discharge from employment.
Plaintiff is an unlearned and uneducated person, who, according to his own testimony, was barely able to write his name. He had a wife and children dependent upon him for support. His only means of livelihood was manual labor, such as he was doing at the time he was allegedly injured. He was with this employer for about 8 years. He was strong physically, and the record reveals that when working with other employees he performed the heaviest kind of work and took it upon himself to relieve fellow employees who were apparently not as able to do as strenuous labor. No complaints were registered against his work until following the alleged accident. It must be borne in mind that it is well settled in our jurisprudence that a compensation claimant is not stigmatized as a malingerer in the absence of clear, convincing and conclusive proof. In our opinion, the facts of this case, viewed in the light of plaintiff's previous work record, as hereinabove referred to, do not accord with such an idea. Price v. Blythe Bros., La.App., 46 So.2d 159; Williams v. Texsun Supply Corporation, La.App., 47 So.2d 93.
On the occasion of the alleged accident, plaintiff and Emile Daigrepont were engaged in removing saw logs from the employer's pasture. Daigrepont was hooking the chain to the logs and plaintiff was operating the tractor, dragging or "snaking" the logs and bunching them for loading on trucks for transportation to a sawmill. On the particular occasion, Daigrepont was a short distance away in a gulley or cooley, whereupon plaintiff descended from the tractor and, with the aid of a cant hook, attempted to roll a log off the chain, when the log rolled forward, with plaintiff straining against the weight to prevent being crushed by the log and cant hook. The cant hook fell on his foot or toe and he experienced a sharp pain in his back. While plaintiff does not claim that his fellow employee saw the accident, he states information as to his injuries was given his fellow worker that day. Plaintiff claims to have likewise informed his employer of his injuries, and on reaching home also informed his wife and son thereof. Daigrepont and defendant deny that plaintiff related the occurrence of an accident or injury to them. It was stipulated that Mrs. Roy was unable to attend court, but the son corroborated plaintiff in that he reported his injury. Likewise, plaintiff informed a number of his neighbors and friends of his injury and particularly one Clifton Saucier, operator of a bar and dance hall, for whom he had been working one night a week as a special deputy. Saucier testified, "I recall that he told me he would probably have to quit, because he couldn't work. He couldn't bend down and lift anything. As long as he was standing up, it was all right." This witness was informed of plaintiff's accident and injury while plaintiff still worked for the defendant and prior to his discharge in November.
That plaintiff alone witnessed and testified as to the occurrence of the accident in which he was allegedly injured is not a sufficient basis for rejection of his claim. It has been correctly stated that an accident or injury in a compensation case can be established by the testimony of the plaintiff alone if there are corroborative circumstances. O'Connor v. American Automobile Insurance Co., La.App., 32 So.2d 624; Sims v. Brown Paper Industries, Inc., La. App., 55 So.2d 311; Ike v. Johnston, La. App., 55 So.2d 21; Dolhonde v. Gullett Gin Co., La.App., 25 So.2d 104.
In Sims v. Brown Paper Industries, Inc., supra [55 So.2d 312], this court stated:
"The defendant earnestly contends that the fall of Mrs. Sims was feigned, and considerable testimony was adduced on just how wet the floor was and whether plaintiff's shoes were more slippery with paste used in the paper *473 bag process. But irrespective of the weight of this evidence, plaintiff says she fell and no witness was produced who could testify to the contrary, and consequently we must accept her testimony on this point and determine if injury was caused by the alleged fall."
In Dolhonde v. Gullett Gin Co., supra [25 So.2d 106], the court stated:
"We have held on several occasions that the testimony of the plaintiff alone is sufficient to make out his case if there is nothing to discredit his account of the accident and resulting disability, and his statements are supported by the surrounding circumstances."
Plaintiff's failure to seek immediate medical attention is understandable and was possibly due to and is explained by his background and lack of education and due to the fact that he had worked for this defendant for 8 years and, as he stated, he was relying upon his employer to procure medical care for him.
Plaintiff was referred by his counsel to Dr. Daniel M. Kingsley, an orthopedist of Alexandria, Louisiana, for examination, who made a report under date of December 3, 1953. From his physical examination and by X-rays the doctor found plaintiff suffering a mild degree of scoliosis, with a slight wedging of the fifth lumbar vertebra down on the left side, with a mild hypertrophic spur formation of the fourth and fifth lumbar vertebrae adjacent to the fourth lumbar interspace, from which he concluded there was a possible disc injury at fourth or fifth lumbar intervertebral level and sub-acute lumbosacral strain. The doctor was of the opinion that plaintiff's disability was real and that he was unable to do laboring work at the time of his examination, and suggested treatment, such as conservative therapy with support of his back, antispasmodics, and rest, and heat applied to the affected areas.
Dr. S. R. Abramson, a general practitioner of Marksville, Louisiana, examined plaintiff May 17, 1954, who reported with reference to his examination to the back and lower extremities:
"The patient stands and walks with a slight list to the left side. The low back is held rigidly in walking. There is spasm of the erector spine muscles bilaterally. There is limitation of flexion of the back by about 5°. Hyper-extension of the back is limited to about 5°. There is slight left scoliosis in the lumbar region. Lateral flexion of the back is limited to about 20° in both directions. There is definite tenderness to palpation of the low back over the sacro-iliac joint on the right side and the lumbo-sacral joint. There is very slight tenderness to deep palpation over the course of the sciatic nerves bilaterally. Straight leg raising causes subjective pain bilaterallythis pain is localized in the lumbo-sacral region. However, there is only moderate limitation of the motion of straight leg raising. Forceful abduction of each thigh causes pain in the back also. Simultaneous flexion of both thighs on abdomen is also painful."
Dr. Abramson suggested a myelography for a definite conclusion on the possibility of a herniated vertebral disc, and that, should this condition be ruled out, a back brace be provided and physiotherapy applied to relieve plaintiff's condition.
Dr. T. E. Banks made an examination of the plaintiff on behalf of the defendant on May 4, 1954, the results of which were detailed in his report of May 10, 1954. The doctor found that plaintiff stands with some slight list to the left and some complaint of tenderness in the lumbosacral region. His opinion was that a period of 8 to 12 weeks is usually the maximum time for recovery from a simple back strain and that after the lapse of more than several months from the date of the accident to his examination, definite symptoms of a more serious ailment should have developed, if existent at that time.
*474 Plaintiff's claim as to injuries received is therefore strongly corroborated by the aforesaid medical testimony. His claims of disability are supported by this same testimony. It is not suggested or intimated that plaintiff was involved in any other accident or that he may have sustained the injuries complained of in any manner other than that claimed by him.
We therefore are led to the inevitable conclusion that plaintiff's claims as to both accident and injury are sufficiently supported and corroborated by the facts and circumstances surrounding the same, such as report of the accident and complaint of injury to members of his family, fellow employee, his employer and others, and by the medical testimony, which reveals that plaintiff sustained accidental injuries and as a result of which his physical condition was so impaired as to prevent the performance of his duties in connection with his former employment or of a kind similar in character.
We are not unmindful of the rule and reluctance of appellate courts to reverse the trial courts upon conclusions of fact, in the absence of manifest error. From our review of the record, we are convinced that our learned brother of the district court failed to give proper consideration and weight to the corroborative facts and circumstances in plaintiff's favor, and that such constitutes manifest error and impels us to a different conclusion.
On the basis of the record now before us, we do not find that we would be justified in fixing any definite period or duration of plaintiff's disability, and, while we are not unmindful of the general rule that, where the plaintiff is shown to be totally disabled as of the date of the trial but the duration of which is inconclusively established, compensation will be awarded as for total and permanent disability, Wynne v. Vaughn, La.App., 33 So.2d 711; Price v. Blythe Bros., supra, we have, in the interest of justice, determined to remand the case for the reception and introduction of proper evidence as to the duration of plaintiff's disability so that such period of disability may be determined from the evidence and fixed according to law, particularly in view of the present status of the record, from which we are unable to determine whether or not plaintiff's disability extended to the date of trial. By this expression, however, no limitation is placed upon the proof of the duration of plaintiff's disability.
For the reasons herein assigned, the judgment appealed is annulled, avoided, and set aside and the case is remanded to the district court for the reception of evidence pertaining to the duration of plaintiff's disability and for the fixing and determination thereof.
The defendant is taxed with all costs.
Set aside and remanded.

On Rehearing
AYRES, Judge.
Defendant on rehearing assigns as errors:
(1) Our reversal of the trial court on a question of fact in the alleged absence of manifest error;
(2) That plaintiff's evidence was not entitled to the credit given it;
(3) That our ruling ignored the established jurisprudence that a plaintiff must establish his case by a preponderance of the evidence;
(4) That less weight was given to the testimony of a specialist than to the testimony of a general practitioner and undue weight was given the testimony of a general practitioner based upon an examination made soon after plaintiff's alleged injury;
(5) That we ignored the requirements of the statute, LSA-R.S. 23:1317 providing that compensation shall be allowed only for such injuries of which *475 there are objective conditions and symptoms.
In support of his contentions, defendant contends the trial court correctly stated the facts and resolved the issues in its opinion, wherein it stated:
"Uncontradicted in the record is the testimony of Eli Bordelon that plaintiff worked for him driving a tractor for about two and a half days around October 20th, 1953. Also to be considered is the admission of plaintiff that before and since his claimed accident he has had employment for one night a week as floor deputy in a night club. This employment, I take it, is what is usually referred to as that of a `bouncer' for the eviction of unruly or undesirable patrons. One of these patrons, Wilfred Gremillion, testified to a scuffle he had with plaintiff early in the present year.
"Wilfred Dauzat, a saw-mill operator, bore out defendant's statement that his logs were delivered to the mill on October 6th, evidence which is to be considered in connection with plaintiff's admission that the bunched logs laid on the ground for several weeks before being transported away.
"Finally, to be considered is the fact that plaintiff did not consult a doctor until December 3rd, several days after his dismissal by defendant, and that he had gone to Dr. Bordelon in Marksville on September 24 with complaints of pain in his chest and muscles, an occurrence of significance if it can be concluded that plaintiff's work in bunching the logs took place several weeks before October 6th.
"In coming to a conclusion on the issue of whether plaintiff sustained an accident as he claims it must be said that plaintiff has not borne the burden of proof resting upon him to prove the occurrence by the preponderance of the evidence. Factors militating strongly against his claim are the contradictions of his fellow employee, Daigrepont, the tardiness in seeking medical attention, and the circumstance of continuing work for several weeks after the accident. Detracting further from the claim are the circumstances of uncertainty as to the time plaintiff was performing the work said to have produced his injury, and the activities in which he has engaged since his discharge in November. In short, plaintiff's case is not one in which abiding faith can be placed".
Continuing, defendant stated:
"The Judge might well have added also, the testimony of Dorris Dauzat, a friend and co-worker of plaintiff, who stated that plaintiff complained to him about one (1) year before the alleged accident, and told him then he was having trouble with his back".
That plaintiff may have been employed as a "bouncer" in a night club both before and after his alleged injury appears to us a matter of no great importance. While we may not be entirely informed of the nature and character of all the duties of such an employee in a night club, it has not been established that such duties are similar in character to the duties of a tractor driver "snaking" or dragging saw logs, even though that in the performance of his duties as a bouncer plaintiff may have had a personal altercation on one occasion with one of his employer's patrons.
Neither do we consider it a matter of controlling importance the fact that apparent discrepancies exist in plaintiff's testimony, particularly as to various dates, such as when he was injured, the period of time the logs were banked before being transported to a sawmill or as to when he consulted a physician, in view of his total lack of education and of his inability to speak English due to his lack of education, and, further, in view of his reliance upon his employer for whom he had worked for eight years. This would also certainly tend to explain his tardiness in seeking medical attention and his continuation in the service of his employer, as we attempted to point out in our original opinion.
*476 Likewise, it is a matter of no material benefit to defendant that plaintiff may have reported to a fellow-employee in the night club a year before the accident that he was having some trouble with his back. Even so, plaintiff was apparently able to and did continue with his work and operate the tractor thereafter until he sustained the accidental injuries complained of. If his condition is such, after the accident and as a result of injuries sustained, that he is unable to further pursue the same work or work of the same or similar character, it matters not that he was already afflicted with a previously existing physical condition which had not reached a disabling state. Even though the accident merely aggravates a pre-existing physical condition, nevertheless the injuries would be compensable if disability results.
We, of course, recognize the principles that the testimony of a specialist in his field is generally entitled to more weight than that of a general practitioner and that the testimony of a physician first examining or treating an injured party is usually entitled to greater weight than the testimony of one more remotely removed therefrom. We had no intention of departing from these rules but endeavored to evaluate and give proper weight to all the testimony offered.
In this connection, the testimony of Dr. Daniel M. Kingsley, an orthopedist, was very positive. He stated:
"Not enough time has elapsed in this patient for recovery from a back strain. He certainly has disability and needs treatment. Conservative therapy should be used, together with re-examination. This patient is so apprehensive that he is not telling exactly what he feels. I do not think he is trying to exaggerate but he is not intelligent and he simply does not understand how to cooperate in the examination. Therefore, depending only on objective findings, an exact diagnosis cannot be made due to the mildness of his disability. Nevertheless, his disability is real and he is unable to do laboring work at this time".
Dr. Kingsley's examination was made under date of December 3, 1953.
Dr. T. E. Banks, likewise an orthopedist, examined plaintiff May 4, 1954, at the request of defendant, and at that time he found no facts indicating any residual disabling injury to plaintiff's back. This evidence was largely responsible for the conclusion reached that probably plaintiff's injuries of a disabling nature did not extend to the date of trial.
Dr. S. R. Abramson's testimony, given after an examination of May 17, 1954, is quoted in our original opinion and needs no further comment.
Lastly, plaintiff's fifth complaint is without any substantial basis as plaintiff's complaints are not wholly and entirely subjective, particularly as pointed out by Dr. Kingsley, whose diagnosis is a possible disc injury at the fourth of fifth lumbar intervertebral level and sub-acute lumbosacral strain, the X-rays showing a mild degree of scoliosis, with a slight wedging of the fifth lumbar vertebra down on the left side. Dr. Abramson likewise found the scoliosis in the lumbar region and limitation in the movement of the back, with definite tenderness to palpation of the lower back over the sacro-iliac joint on the right side and the lumbosacral joint, and slight tenderness to deep palpation over the course of the sciatic nerves.
Our review of the record has failed to produce any change in the conclusions heretofore reached and as expressed in our original opinion. Therefore, our original decree and judgment is reinstated and made the final judgment of this court.
And it is so ordered.