LOTTINGER, Judge.
This case presents the perplexing question of the applicability of the provisions of our Workmen’s Compensation Statute to the operations of the small farmer.
There appears to be no dispute but that the plaintiff, Delson Fontenot, while in the employ of the defendant, Ulysse Fontenot, was injured on November 21, 1956 when a steel fragment flew from the sledge hammer or wedge he was using to split fence posts and lodged in his left eye. As a result of the accident the injured eye had to be re.moved and, as his right eye was already “blind” to all intents and purposes, the plaintiff is obviously totally and permanently disabled within the meaning of our compensation statute. The only question to be decided, therefore, is whether in view of the nature of the employer’s business and the duties of the employee the disability suffered is compensable.
The trial judge concluded that the defendant was not engaged in a hazardous business within the contemplation of LSA-R.S. 23:1035 and the matter is now before us on an appeal taken by the plaintiff from a judgment dismissing his suit.
In the course of his written reasons for judgment the trial judge found certain factual situations to exist with which findings we find no manifest error and which, accordingly, we herewith set forth:
*213 “Defendant, Ulysse Fontenot, is a small farmer who owns twenty (20) acres of land in Evangeline Parish. His father, Relis Fontenot, and grandmother, Mrs. Ozema Fontenot, also own land in the same vicinity and defendant, in addition to planting his land, rents approximately sixty (60) acres of their land. The land not rented by defendant is rented to small tenants, some of whom have been on the' land for forty years, and some of whom are the children of tenants who stayed with the land after they became grown. There appears to have been from three to five such tenants over the years.
“Defendant plants about fifty (50) acres of rice, and about nine (9) acres of cotton. For his convenience in cultivating and growing the rice, plaintiff owns one tractor. All mechanical harvesting is done by machines owned by larger and more prosperous farmers who furnish the machines and labor and charge defendant $1.00 per barrel ■of rice harvested. Defendant also uses his tractor on a relief pump to lift water into a ditch to irrigate his rice during the growing season. It is common knowledge that a farm the size of defendant’s is a very small farm; it being not unusual for farmers in the area to grow several hundred or even thousands of acres. * * *
“Plaintiff entered into an agreement with defendant whereby plaintiff would do the work around the barn yard and residence premises on the farm for the wage of $35.00 per month plus his room, board and laundry. Defendant pointed out to plaintiff that his taking the job opened other opportunities to plaintiff: namely, plaintiff could obtain from defendant’s mother some land on which to grow a crop on a one-fifth share basis, the share to be paid to the landowner. Further, plaintiff could choose a plot to plant a garden. The agreement •was made in July or August and contemplated farming the following year. It was understood that defendant might need to hire men to help with the harvest of his crop and that plaintiff could work and would be paid extra for harvesting. The only such harvesting done by plaintiff was, as he testified, picking cotton.
“It is customary during the fall for the tenants to get together and split posts to repair existing fences and to make new fences setting off from defendant’s rice land the acreage they will plant in cotton, corn or potatoes. On the day of the accident, plaintiff and other tenants went to the forest land for the purpose of splitting posts pursuant to this custom. None of the men were being paid by defendant for this work although he always paid the tenants extra when they worked for him or on his crops.
“It is observed that plaintiff did not testify that he used the tractor prior to the accident. He testified that he used the automobile to go get ‘whiskey’ but apparently does not contend that he used same in connection with the duties of his employment. The only use of the tractor being after the accident and for plaintiff’s convenience in cultivating approximately one acre of land and cutting cotton stalks on land which plaintiff, still on the farm, intended to plant for himself. * * *
“The plaintiff may or may not have been a sharecropper, but although not required to drive the defendant’s tractor and truck, did so, and was to be permitted to farm approximately three or four acres of land for himself if he so desired. * * *
“Plaintiff could use the machinery for his convenience as could the other tenants: the employment did not require its use; its use was not a necessary incident of the employment. * * * t)
*214 This is a field in our compensation law, we believe, where there is an obvious need for legislative pronouncement; in the absence of same, however, we can only be guided by the jurisprudence, and an examination of the decisions of this and other courts convinces us that the observations made by us in the case of Allen v. Yantis, La.App., 196 So. 530, 533, are applicable and controlling here.
In that case we said:
“While we are in full accord with the tendency of extending the protection to laborers under the compensation law by making a liberal construction of it in embracing just as many employees thereunder as will be justified by a liberal interpretation, yet we feel that there is quite a difference in extending the law to cover the driver or operator of a gasoline engine as was done by the Supreme Court in the Haddad case and as the law itself implies, and in extending the law to cover those who have nothing to do zvith the installation, repair, removal or operation of these gasoline engines, but only work in close proximity to them or come in frequent contact with them. It seems to us that if the Legislature had intended to include those who work in close proximity to engines and machinery, or come in contact with them, where the employer’s business, trade or occupation is not declared to be hazardous, words would have been used to indicate that intention, rather than using only the words installation, repair, erection, removal or operation of engines and other forms of machinery. * * *
“But we conceive it to be quite different where the employer’s primary business is nonhazardous, such as farming, for in that case in order for the employee to come under the compensation law, he must, as a part of his regular duties, be performing services that arise out of some regular feature of his employer’s business which is hazardous. So that the farmer who regularly uses a motor truck in his farming operations may be said to be engaged in a hazardous business only as to the driver or operator of the truck, and not as to those who load and unload that truck with cotton, corn, potatoes and other farm produce. If all the farm hands who sometime' during the year are required to load and unload farm produce on the truck, or ride on it occasionally for that purpose, are protected by the compensation law, it would be tantamount to holding that practically every farmer, large or small, would come under the act and should protect himself by compensation insurance. We seriously doubt if the Legislature in passing the law ever intended such a result. We are not saying that farm hands should not be protected by the compensation law, but we do feel that if the Legislature intended for them to be protected by the law, it could have easily included farming as one of the trades and businesses covered therein.”' (Emphasis supplied.)
As was said by the Supreme Court in the case of Brownfield v. Southern Amusement Co., 196 La. 73, 198 So. 656, and quoted with approval by us in the case of Goodman v. National Casualty Co., La.App., 15 So.2d 173, and likewise quoted with approval by the Orleans Court of Appeal in the case of Luce v. New Hotel Monteleone, 92 So.2d 730, 733:
“Where an employee is injured in a business or occupation not specifically mentioned in the law as hazardous, the inquiry is whether or not the duties of the employee required him to perform services of a hazardous nature incidental to his employment and directly associated with his employer’s business.”
The evidence in this case fails to convince us that the plaintiff either drove or operated a truck or tractor pursuant to his *215 ■duties, but, moreover, we are convinced •that his use of same was for his own enjoyment or convenience. This being the case, we do not believe that the cases cited by ■counsel for plaintiff are applicable. Nor do we find any conflict in our holding here with what we said in Pierre v. Farm Development Corporation, La.App., 39 So.2d 154 (where the plaintiff was employed as a tractor driver and was so engaged when injured) or in Martel v. Seale, La.App., 93 So.2d 257 (where the minor was employed as a tractor driver and was injured while hitching a plow to the tractor).
For the reasons assigned, the judgment appealed from is affirmed.
Judgment affirmed.