HAMITER, Justice.
 

 In this suit plaintiff is seeking compensation payments as for total and permanent disability allegedly growing out of an injury received while he was working for the defendant farmer in Evangeline Parish. The district court rejected his demands, and its judgment was affirmed by the First Circuit Court of Appeal. See 95 So.2d 212. The case is presently before us on a writ of certiorari directed to the latter tribunal.
 

 In written reasons for judgment the district judge (Honorable J. Cleveland Frugé) set forth in detail the facts on which his decision was based, and those findings were concurred in and adopted by the Court of Appeal. They are amply substantiated by the record, and we quote them with approval as follows:
 

 “Defendant, Ulysse Fontenot, is a small farmer who owns twenty (20) acres of land in Evangeline Parish. His father, Relis Fontenot, and grandmother, Mrs. Ozema Fontenot, also own land in the same vicinity and defendant, in addition to planting his land, rents approximately sixty (60) acres of their land. The land not rented by defendant is rented to small tenants, some of whom have been on the land for forty years, and some of whom are the chil
 
 *484
 
 dren of tenants who stayed with the land after they became grown. There appears to have been from three to five such tenants over the years.
 

 “Defendant plants about fifty (50) acres of rice, and about nine (9) acres of cotton. For his convenience in cultivating and growing the rice, defendant owns one tractor. All mechanical harvesting is done by machines owned by larger and more prosperous farmers who furnish the machines and labor and charge defendant $1 per barrel of rice harvested. Defendant also uses his tractor on a relief pump to lift water into a ditch to irrigate his rice during the growing season. It is common knowledge that a farm the size of defendant’s is a very small farm; it being not unusual for farmers in the area to grow several hundred or even thousands of acres.
 

 “Delson Fontenot, the plaintiff, while allegedly in the employ of Ulysse Fontenot was injured on or about 2:00 p. m., November 21, 1956, when a steel chip flew off the sledge hammer or wedge he was using to split fence posts, and hit him in his left eye. His left eye had to be removed as a result of the accident, and his right eye is blind.
 

 “Plaintiff entered into an agreement with defendant whereby plaintiff would do the work around the barn yard and residence premises on the farm for the wage of $35 per month plus his room, board and laundry. Defendant pointed out to plaintiff that his taking the job opened other opportunities to plaintiff: namely, plaintiff could obtain from defendant’s mother some land on which to grow a crop on a one-fifth share basis, the share to be paid to the landowner. Further, plaintiff could choose a plot to plant a garden. The agreement was made in July or August and contemplated farming the following year. It was understood that defendant might need to hire men to help with the harvest of his crop and that plaintiff could work and would be paid extra for harvesting. The only such harvesting done by plaintiff was, as he testified, picking cotton.
 

 “It is customary during the fall for the tenants to get together and split posts to repair existing fences and to make new fences setting off from defendant’s rice land the acreage they will plant in cotton, corn or potatoes. On the day of the accident, plaintiff and other tenants went to the forest land for the purpose of splitting posts pursuant to this custom. None of the men were being paid by defendant for this work although he always paid the tenants extra when they worked for him or on his crops.
 

 
 *485
 
 “It is observed that plaintiff did not testify that he used the tractor prior to the accident. He testified that he used the automobile to go get ‘whiskey’ but apparently does not contend that he used same in connection with the duties of his employment. The only use of the tractor being after the accident and for plaintiff’s convenience in cultivating approximately one acre of land and cutting cotton stalks on land which plaintiff, still on the farm, intended to plant for himself.
 

 (t
 
 * * *
 
 *
 
 * *
 

 “The plaintiff may or may not have been a sharecropper, but although not required to drive the defendant’s tractor and truck, did so, and was to be permitted to farm approximately three or four acres of land for himself if he so desired. * * *
 

 “ * * * * *
 

 “ * * * Plaintiff could use the machinery (tractor and truck) for his convenience as could the other tenants: the employment did not require its use; its use was not a necessary incident of the employment.”
 

 The Court of Appeal, after adopting these findings, was also warranted in stating [95 So.2d 214] :
 

 “The evidence in this case fails to convince us that the plaintiff either drove or operated a truck or tractor pursuant to his duties, but, moreover, we are convinced that his use of same was for his own enjoyment or convenience. * * * ”
 

 ■ Accordingly, the question posed is whether, in view of the above circumstances, plaintiff’s injuries are compensable under the provisions of the Workmen’s Compensation Law. R.S. 23:1021 et seq.
 

 It is well settled that farming is not a hazardous occupation per se. Robinson v. Atkinson, 198 La. 238, 3 So.2d 604; Collins v. Spielman, 200 La. 586, 8 So.2d 608. However, it has often been held that an occupation or a business not hazardous per se becomes amenable to the provisions of the Workmen’s Compensation Law, and the employer is required to pay benefits to an injured employee under certain circumstances, if it entails the operation of mechanized equipment (such as trucks, tractors, automobiles, etc.) as a necessary incident thereto. Robinson v. Atkinson and Collins v. Spielman, both supra, Reagor v. First National Life Insurance Company, 212 La. 789, 33 So.2d 521, and Meyers v. Southwest Region Conference Association of Seventh Day Adventists, 230 La. 310, 88 So.2d 381.
 

 With respect to the liability of the employer in the latter type of occupation or business, as well as to the right of recovery of an injured person employed therein, the pronouncements contained in Gallien v. Judge, 28 So.2d 101, 102 (Court of Appeal,
 
 *488
 
 First Circuit, decided in 1947 and a writ of certiorari denied by this court) accurately and fully summarize the jurisprudence of this state. We quote with approval from the opinion of that case, authored by the late Justice Sam A. Le Blanc who subsequently served as a member of this court, as follows:
 

 “We have presented before us therefore that intricate question as to how far the provisions of the Employers’ Liability Law should be applied to persons who are engaged by an employer whose business, although not hazardous under the provisions of the law itself, does use and operate in connection therewith, automotive vehicles or stationary machinery which may be said to convert at least part of his business into one that is hazardous and would therefore come within the provisions of the law.
 

 “Broadly stated, the jurisprudence in Louisiana, in cases of this kind, is to the effect that where an employer’s main or primary business is nonhazardous but some features of it partake of a hazardous nature and one of his employees is engaged in both parts of the work, his injury may be compensable even though it should occur when he is engaged in the performance of his duties in the nonhazardous part. But, as stated, he must be engaged in both features of the work or at least it should appear that his services are occasionally connected either directly or indirectly with the hazardous part of the business. Where the service he is performing at the time of the accident is wholly disassociated from the hazardous feature of the business his injury and resulting disability is not compensable. * * *
 

 “In this case whilst plaintiff has alleged a fact which may bring the employer’s business within the scope of the compensation law since he averred that in operating his cattle business (which is not included among the hazardous occupations listed in the statute) he used motor trucks and other motor vehicles in connection therewith (which would have the effect of rendering that part of the business hazardous) he did not allege any fact which would indicate that the services he was performing at the time of his injury had any connection, even remotely, with the storage, maintenance or operation of the trucks or other motor vehicles. Nor did he allege that ever, directly or indirectly, or even occasionally, his duties required that he come in contact with the hazardous feature of the employer’s business. * * * ”
 

 In keeping with these pronouncements are observations contained in Richardson v. Crescent Forwarding & Transportation Co., Ltd., 17 La.App. 428, 135 So. 88, Gray
 
 *489
 
 v. Tremont Lumber Company, La.App., 185 So. 314 (writ of certiorari denied), and Reagor v. First National Life Insurance Company and Meyers v. Southwest Region Conference Association of Seventh Day Adventists, both supra. Particularly in the Reagor case we observed [212 La. 789, 33 So.2d 522] : “The insurance business is not one of the occupations designated as hazardous under Section 1 of Act 20 of 1914. However, this does not mean that defendant is not amenable to the provisions of the Act if, as plaintiff claims, the business entails the operation of automobiles as a necessary incident thereto. * * * provided, of course, that plaintiff is sometimes brought into contact with the hazardous features. Byas v. Hotel Bentley, Inc., 157 La. 1030, 103 So. 303. Obviously, the mere allegation that some of the solicitors employed by defendant use automobiles in performing their work falls far short of a showing that the operation of automobiles is a necessary incident to defendant’s business and that plaintiff was required by his employment to ride in, or be otherwise brought in contact with, the machines.” And in the Meyers case we said [230 La. 310, 88 So.2d 385]: “Although the conducting of a church organization is not hazardous per se, this does not mean that such a body is not amenable to the provisions of the Compensation Act if its operations are such as to entail the use of automobiles as a necessary incident thereto. * * * Indeed, it is well established by the foregoing authorities and others too numerous to mention that, if a business normally nonhazardous has hazardous features, any employee regularly exposed to the hazardous features is entitled to workmen’s compensation even though, when injured, he is engaged in the nonhazardous branch of his work. * * * ”
 

 Thus, according to our settled jurisprudence, for an injured employee to receive benefits under the statute, where the business of the employer is essentially nonhazardous, it must be shown that the duties of his employment demanded that he operate or otherwise come in contact with mechanized equipment. No case of this nature has been called to our attention, and we know of none, in which compensation was awarded in the absence of such a showing.
 

 This plaintiff, as stated above, was not required by the duties of his employment to, and he did not in fact, come in contact with any of the hazardous features of defendant’s farming operations. Consequently, according to the aforediscussed jurisprudence, his injury is not compensable.
 

 The cases cited and relied on by plaintiff’s counsel do not militate against this conclusion (Collins v. Spielman and Robinson v. Atkinson, both supra; Griffin v. Catherine Sugar Company, Inc., 219 La. 846, 54 So.2d 121; Norris v. Hargis, La.
 
 *491
 
 App., 77 So.2d 60, and Roy v. Guillot, La.App., 84 So.2d 469). The employee in each was permitted recovery under the statute because he was required to, and did as a part of his regular employment, operate or otherwise come in contact with a mechanized phase of the business involved. In none was it held that an employee, not exposed by his employment to power equipment, was entitled to compensation benefits merely because the employer used some machinery in connection with his ordinarily nonhazardous business.
 

 For the reasons assigned the judgment of the Court of Appeal is affirmed.