### ATTREP v. HORECKY et al.

#### No. 1763.

Court of Appeal of Louisiana. First Circuit.

Dec. 9, 1937.

W. C. Perrault, of Opelousas, for appellants.

Le Doux Provosty, of Alexandria, for appellee.

**LE BLANC, Judge.**

On July 8, 1936, at about 1:30 o'clock p. m., plaintiff sustained personal injuries when the truck which he was driving was run into from the rear by another truck owned by the defendant John Horecky, operating a wholesale grocery business at Church Point. The driver of the Horecky truck was a man named Andes McBride.

Plaintiff was in the employ of the National Bakery of Alexandria and covered a delivery route from Alexandria as far as Lebeau, then to Opelousas and back to Alexandria through Ville Platte, Pine Prairie, Easton, Turkey Creek, and Lecompte. The accident in which he was injured took place about two miles northwest of Opelousas on the highway leading to Ville Platte.

Claiming that the accident and his injuries resulting therefrom were caused solely by reason of the negligence of the driver of the Horecky truck, which is set out in particular in his petition filed herein, plaintiff instituted this suit against Horecky and his public liability insurance carrier, the Employers' Liability Assurance Corporation, Ltd., to recover damages which he itemized as follows: Pain and suffering, $3,500; permanent injury to neck and chest, $3,500; hospital and doctors' bills to the time of filing suit, $393.30, with reservation to make demand for additional expenses of this nature incurred subsequently; and for loss of employment and earning power, $25 per week.

The defendants denied liability, but on trial of the case in the lower court it was apparent that their principal interest was in resisting a claim which they contended, as they had set out in the pleadings, was "ridiculously excessive" as to the amounts demanded.

After trial, the district judge rendered judgment in favor of plaintiff and against both defendants, in solido, in the sum of $1,914.30. He supported his findings of fact with written reasons, discussing each item he allowed. For pain and suffering, he awarded plaintiff $800; for loss of employment and earning power, $700; and for hospital and doctors' bills, $414.30. He also taxed, as costs, the fees of the doctors who all testified as experts. The defendants have appealed, and in this court they concede liability but insist that the award as made by the judge below is grossly excessive. Plaintiff has answered the appeal, asking for an increase in the amount of the judgment to that originally prayed for.

The district judge's description of the accident itself is accurately given as follows:

"It appears from the evidence that the plaintiff was driving on the right hand side of the road at a speed of about 20 to 25 miles per hour, and that the grocery truck was approaching from the rear at a fast rate of speed and was attempting to pass the bakery truck when it was confronted by an automobile coming from Opelousas toward Alexandria. (We might add at this point that the bakery truck was a closed truck). Being unable to pass the bakery truck, and travelling too fast to stop, the grocery truck hit the bakery truck from the rear. The impact was so great

that the rear end of the bakery truck was smashed in, the frame sprung and the body pushed forward on the chassis about six inches. It went down the embankment 75 or 80 feet, tore down the fence, and went over 15 or 18 corn rows, but without turning over. The grocery truck traveled between 300 and 400 feet before coming to a stop after hitting the bakery truck."

In relating the condition in which plaintiff. was found immediately following the accident and the results which followed, as well as the treatment he was administered over a period of several months, the district judge, from his findings of facts, states:

"After the collision the plaintiff was found with both of his knees under the instrument board and his head under the steering wheel. He was semi-conscious; * * *. An ambulance was called and he was brought to St. Rita's Infirmary, in Opelousas, operated by Dr. Bienvenu. Dr. Bienvenu testified that his first diagnosis was that plaintiff was suffering from a severe concussion of the brain, possible fracture of the skull and vertebrae, possible fracture of the anterior chest wall, and severe shock. He was administered routine treatment for shock, quiet in bed, morphine, darkness in the room and external heat. He required the services of nurses night and day for eight days. The effect of the concussion finally passed away, and it was found that his skull was not fractured. He remained in the hospital for 12 days, from July 8th., to July 20th., and was then sent home and put to bed. He was then treated by Dr. White, in Alexandria, from July 22 to August 26, 1936. On the latter date, Dr. White discharged him to go to work, but upon his attempting to resume work, he found he could not do so. He still suffered pains in his chest, neck and head. When he left Dr. Bienvenu's hospital in Opelousas, it was with the understanding that he would be back later for further examination. From August 28 to September 28, 1936, he was seen professionally ten times by Dr. Bienvenu. On October 6, 1936, Dr. White wrote the workmen's compensation insurer, National Casualty Company, that he had seen the plaintiff several days prior thereto; that he still complained of pain; and that with their consent he would continue to treat him. From October 5 to November 6, 1936, he was under treatment by Dr. Texada of Alexandria. He still complained of pain in his chest, neck and shoulders. Even on the trial of the case, plaintiff still complained of pains in his head and neck, especially when he rotated his head or lifted his arms."

From the district judge's account of the collision, the condition in which plaintiff was found, and the long period of treatment he received, it is evident that he must have undergone a very severe shock. Counsel for defendants seem to treat his injury as one of simple concussion of the brain, which, they contend, once having cleared up, made it, after all, a matter of minor importance. They attempt to belittle his complaints as to suffering on the ground that suffering is purely subjective, and that a person of plaintiff's temperament is prone to greatly exaggerate his condition. The effect of counsel's argument is simply that plaintiff is a malingerer, and still not one of the numerous doctors who testified would classify him as such.

We agree with defendants that the medical testimony does indicate that once a brain concussion has cleared, the period of danger is over. But that does not detract from the severity of the concussion itself and its attending uncertainty and the shock which must follow it. In this case especially, the violence of the blow seems to have made it an aggravated case as shown by the fact that plaintiff had to be kept in the hospital under treatment for shock for twelve days with nurses in attendance upon him night and day during eight of those twelve days.

It is evident that he was discharged from the hospital because all danger of ill effects from the concussion and possible fractures of the skull and vertebrae had passed. That that wasn't the end of plaintiff's trouble, however, is unfortunately for him, only too well demonstrated by the frequent treatments administered to him by different doctors over a period of four months. Considering the position in which he was found in the truck, with his head under the steering wheel, there is certainly cause for him to have sustained injuries to his neck and chest from the effects of which he was still suffering on the day the suit was tried, more than six months after the accident.

An attempt was made by defendants, through the testimony of one of the doctors, to show that his complaints relative to pains in his chest and in the muscles

of his neck could very well be attributed to a disease of the gums, known as pyorrhea, but this doctor alone is of that opinion. From the testimony of the other doctors it is very doubtful that the pyorrhea existed at all.

We are in accord with the district judge that the testimony is not of a sufficient nature to support the claim made in his behalf, that plaintiff's is a case of traumatic neurosis; but we are convinced that his shocking experience was enough to upset and unnerve him and that the suffering and pain which followed was severe enough to justify an even larger award on this item than made by the district judge. We have considered the different awards made in the cases we have been referred to and numerous others involving kindred injuries and their consequences. Of course, as frequently stated by the courts, the decision in each case must rest on its own particular facts. Others may serve as a guide. Looking to all of them as such, we believe that an award of $1,200 on this item will come nearer doing substantial justice than one of $800, and it will accordingly be increased to that extent.

We think that the testimony amply supports the award of $700 for loss of earning capacity during the time as found by the district judge. Concerning this item, plaintiff testified that at the time of the accident, he was receiving a weekly wage of $25 and in this he is corroborated by his employer. The compensation paid him by the compensation insurance carrier was based on that wage. The proof is to the effect that he made earnest attempts to resume his work but up to the time of the trial of his case had been unable to do so. The medical experts are not in accord on the point of plaintiff's alleged disability, but still all of them refused to say that he was malingering. The district judge had him under observation and did not believe that he was feigning or exaggerating his condition. We certainly find no reason to disturb the award of $700 as made on this item.

Defendants complain that the amount of $413.30 allowed for doctors' and hospital bills is more than the amount alleged in plaintiff's petition. However, as shown in our statement of the case, plaintiff reserved the right to demand additional expenses of this kind incurred after he filed his suit, and we take it that a few charges made by Dr. Texada subsequent to that time account for the difference in the two amounts.

Further complaint is made with reference to the fees allowed some of the doctors as experts, and taxed as costs, when, it is contended, the testimony of these doctors was not limited strictly to professional opinions and examinations, but was given as physicians employed by the plaintiff to testify to the facts concerning his condition. But we find that in addition to testifying as ordinary medical witnesses, the doctors were called on throughout, by both sides, to express expert opinions, the same as those who admittedly were called as experts. We find no error in that part of the judgment which taxed their fees as costs.

For the reasons stated, it is ordered that the judgment appealed from be amended by increasing the amount allowed from the sum of $1,914.30 to the sum of $2,314.30, and that as thus amended, it be affirmed.