LOTTINGER, Judge.
This is a workmen’s compensation proceeding wherein the plaintiff seeks to recover for total permanent disability. He alleges in his petition that the defendant, from November, 1947 until present, has been engaged in the raising of cattle and horses, a business which requires the use of a gasoline pump in order to water the animals and the operation of a truck to haul feed and care for them. He alleges further that he was hired -by defendant in October or November, 1947, at a wage of $3.50 per day, and that among his duties he was to operate both the gasoline water pump and the truck.
The accident upon which the suit is based is alleged to have occurred during either November or December, 1947, when plaintiff, while in the performance of his duties, attempted to start the gasoline pump engine. Due to a mechanical failure the crank handle flew from the fly wheel and struck plaintiff on his right knee. At this time, he avers, he suffered no disability or pain and it was not until approximately February 5, 1948, when his knee pained him to1 the extent that he required medical treatment. On or about April 1, 1948, the petition states that he was discharged by defendant because of his inability to perform the services required of him. Upon visiting a doctor he learned he had infectious arthritis, a condition which was finally remedied by a fusion operation which left him with a stiff knee.
The defendant filed exceptions of vagueness, no cause and no' right of action, and a plea of prescription and then, reserving his rights under the exceptions, filed an answer in which all pertinent allegations of the plaintiff’s petition were denied.
The trial judge referred the exceptions to the merits. After the completion of the trial, but prior to the filing of the plaintiff’s brief, the latter filed a motion to reopen the case in order to take additional rebuttal testimony. The rebuttal testimony sought to be adduced was for the purpose of disproving the contention made by the defendant that plaintiff -had been disabled prior to the time he came to his place. After argument the motion was refused.
Briefs were later submitted and judgment was rendered in favor of the defendant. The plaintiff then filed an application for a new trial which was denied. The case is now before us on a devolutive appeal taken by the plaintiff.
Before proceeding to a review of the merits of the case we will first address ourselves to the question of the correctness of the trial judge’s ruling with respect to the application for a new trial. In his written reasons for judgment the trial court concluded :
“From the testimony in the case the Court concludes that plaintiff has not shown that an injury occurred in this case and granting for purposes of argument that an injury did occur, the time of the accident is too remote that the Court cannot establish with certainty when the alleged injury took place. The Court realizes that this is a Workmen’s Compensation case but is of the opinion plaintiff has not made out his case with that certainty required by law of him in civil cases. The Court having come to this conclusion it is not necessary to determine whether plaintiff was employed by the defendant on the date of the alleged injury.
“Plaintiff moved for either a rehearing or a new trial. The Court is not certain which was -applied for because at this writing the application is not in the record. However, the case had been continued on several occasions and ample time was granted to plaintiff to prepare his case and the evidence sought to be had on new trial or rehearing, in the opinion of the Court, would have added nothing to the case, but would have merely been cumulative; accordingly the application was denied.”
Both the motion to reopen the case and the application for a new trial were based upon evidence which plaintiff wished to introduce to show that he was not injured or incapacitated previous to the time he was employed by defendant. Attached to his application for a new trial were five affidavits, all of which were .to the effect that plaintiff, previous to the time he moved on defendant’s farm, was able to perform a full day’s work and was not suffering from arthritis or crippled in any way.
*259 According to our appreciation of the trial judge’s holding he ruled that the plaintiff did. not prove that an injury did occur. The evidence which plaintiff wished to introduce in a new trial would not have been concerned with the fact of injury, but only with plaintiff’s physical condition at the time he went to live on the farm of the defendant. Testimony of this nature, while it may to some extent have shown the probability of the disabling condition developing during the time plaintiff lived at defendant’s farm, would not, to our way of thinking, in any way have shown the occurrence of an injury or accident as required by our compensation law. Certainly we find no such abuse of discretion on the part of the trial judge as would justify a reversal of his ruling.
The conflicts to be found in the record in this case are many and varied. Not the least of these is the question of whether the plaintiff was ever an employee of the defendant or merely living on the farm through the good graces of the latter. Be that as it may, we will proceed by examining the correctness of the trial judge’s ruling to the effect that the plaintiff failed to prove the occurrence of an injury.
As so often happens no one else was present when the crank allegedly struck the plaintiff’s knee. Aside from the testimony of the plaintiff himself, we have only the testimony of his son, Mr. Allen Johnson, and his son-in-law, Mr. Harry Conner, both of whom testified that the plaintiff had complained to them of having been hit by the crank.
As opposed to the testimony of the plaintiff and his witnesses we have that of the defendant, who not only contends that no injury occurred but also that plaintiff’s knee was disabled when he first came to the farm.
The record contains the testimony of two doctors, one of whom testified on behalf of each litigant. The pertinent part of the defendant’s expert, Dr. Harry S. Snatic, is as follows:
“Q. Would you state what you found, what he came to you for and what was the result of your examination and treatment? A. I first saw Mr. Lawrence Johnson in my office on August 23, 1948. At this time he came in with complaint of pain in the right knee. There was demonstrable swelling of the knee, floating of the knee cap, with fluid in the knee joint. I asked Mr. Johnson if he had hurt himself at that time and he gave no history of injury whatsoever.
“The Court: What was that, Doctor ? A. I asked Mr. Johnson if he had hurt his knee, and he gave no history of injury. I aspirated the- knee and got about 75 c.c. of fluid from the knee joint, which is typical of chronic arthritis, you find in chronic arthritis conditions, and felt he had infectious arthritis. His knee was hot, swollen, tender and the man was actually ill. I sent him to the hospital and treated him as acute infection. Examination of the knee showed no evidence of any fractures or dislocations of the knee joints, no bone injury, with exception of chronic arthritic condition of long • standing. I sent him into the hospital that date, and treated him there. Had him in my office August 28, five days later, and aspirated his knee again, at which time I got in the neighborhood of 25 or 30 c.c. .of the same type of fluid. There was no blood in this fluid, no evidence of acute injury that had occurred, any recent injury. Usually you will get pure blood, practically, out of a knee joint of that type,
“Again on'11-15-48, I aspirated the knee and got a slight amount of fluid. On October 7, 1949, he was still having trouble with this knee and I referred him to Charity Hospital, New Orleans, for treatment. I didn’t see Mr. Johnson until November 3rd. of this year, at which time he came back and I examined his knee, and saw— call it ankylosis of the knee joint. They removed the knee cap and the articular surfaces of the femur, the long bone of the hip, and the articular surfaces of the tibia, upper and lower bone, lower leg, arid formed a fusion between those bones and gave him a stiff leg. That apparently, was the only way they could stop the formation of this fluid in his knee joint • and swelling of the capsule which gave him his pain. With no motion in his joint, he *260 lias been relieved of his pain. He has shortening of that leg about an inch and three 'quarters, and demonstrable limp.
“Q. Now, Doctor, you saw him in the month of August, 1948? A. August 23rd.
“Q. Is it true that he told you'at the time that there was no history of injury to his knee? A. Yes, Sir.
“Q. Your records disclosed that? A. Yes, Sir.
“Q. You entered it on your records at that time? A. I take care of all my compensation cases separate from my, office work. I keep them in a different file. They are easier to get to when I write my letters to insurance companies, I have them-in a separate file.
“Q. From your examination of Mr. Johnson at the time would you say that he was' suffering from a traumatic arthritis ? A. There is no way that I can say. that it wasn’t a traumatic Arthritis. I can only give what the patient’s history gave. It didn’t seem to be traumatic arthritis to me in that he apparently had no locking you would find in a cartilage of his knee.’ He had no evidence of fracture, no evidence of dislocation. There was no means by which I could say he had or had not had injury to the soft tissues of the knee. By that I mean the lateral ligaments of the knee or traumatic bursitis, or covering of the. knee joint.
“Q. There was no history of injury? A. No history at all.
“Q. He denied injury, is that correct? A. Yes, Sir.”
Dr. Charles V. Hatchette examined the plaintiff on January or February,. 1949, and testified as follows:
“The Witness: I, am not positive at all of that statement. Anyway, the diagnosis of infectious' arthritis :was made on the physical and X-ray examination. This type of infection of a joint is in all cases that I have seen the result of some traumatic or penetrating wound of the knee joint, of the joint involved. We see other types of arthritis, usually -the hypertrophic and the atrophic types which are' rather common. They are diseased ‘ conditions'. which are not very well understood insofar as causative factors are concerned. But the infectious Arthritis which Mr. Johnson had is an entirely separate condition and is the result of outright infection of the joint.
“Q. Then, Dr. Hatchette, as I understand what you have said, it is also quite possible that a blow can be sustained and the actual serious inflammation will not become known for a period of a couple months after the actual blow, that that is quité possible is that correct? A. It is indeed quite possible to have an internal derangement of a knee joint and swelling can occur in that joint and subside. The slightest twist might bring about a recurrence of that derangement and this can go on for an indefinite period of time. This is described commonly as a ‘trick knee’. It is commonly seen in football players from injuries of that type, and it is also referred to as a ‘football knee’. The type of injury which Mr. Johnson described to me would indicate an internal derangement of the knee which he received about a year prior to his visit to my office. The infectious arthritis is a mysterious thing, but I cannot conceive of it happening or occurring without some external force being involved, as stated before, either violent trauma or a puncture wound of the joint.”
This same witness, on cross examination, testified as follows:
“Q. Doctor, the history given to you by the patient, Mr. Johnson, was that he had received several injuries between fourteen and sixteen months prior to his visit to your office? A. Yes, Sir.
“Q. If in August of 1948 he had consulted his physician, denied any history of injury and repeated aspirations of the knee were made and no blood had been aspirated and there was no traumatic affair, could not this puncture that was necessary for the aspiration bring about a greater complication of this so that when you saw him it could have been due to that puncture ? A. Yes, Sir. , ■
“Q. In other words, when he first went to his physician and said there was no traumatic condition and these aspirations were made, you couldn’t say his condition *261 was not due to these puncture wounds? A. That’s right.
“Q. Did you not find on your recent examination of Mr. Johnson he was suffering with chronic hypertrophic arthritis of the left knee? A. Yes.”
It has been correctly stated that an accident or injury in a compensation case can be proved by the plaintiff alone if there are corroborating circumstances. Here, however, we find no corroborating circumstances, and feel that the plaintiff has failed to make out his case with that degree of certainty which the law requires. Certainly we find no manifest error on the part of the trial judge and the ruling appealed from is hereby affirmed.
Judgment affirmed.