120 So.2d 863 (1960)
Lionel BROUSSARD
v.
DUMAS CHEVROLET COMPANY and Royal Indemnity Company.
No. 21399.
Court of Appeal of Louisiana, Orleans.
May 23, 1960.
Rehearing Denied June 6, 1960.
Certiorari Denied June 29, 1960.
*864 Bienvenu & Culver, New Orleans, for defendants-appellants.
C. Cyril Broussard, New Orleans, for plaintiff-appellee.
*865 McBRIDE, Judge.
This workmen's compensation suit was brought by Lionel Broussard, a salesman of secondhand automobiles, against Dumas Chevrolet Company, his former employer, and its compensation liability insurer, Royal Indemnity Company, the plaintiff alleging that on August 13, 1957, on the premises of Dumas Chevrolet Company, the general manager thereof, Slay, punched him in the face, and, further, that on August 22, 1957, plaintiff injured his ankle, both accidents occurring during the course and scope of his employment, and that as a result of the two occurrences, he suffered injuries which have totally and permanently disabled him from doing work of any reasonable character. He claims compensation at the rate of $35 per week for a period not to exceed 400 weeks, the statutory penalty of 12% thereon, plus a reasonable attorney's fee, under the provisions of LSA-R.S. 22:658, and for medical expenses.
The defendants' answer amounts to what may be considered a general denial of the allegations of the petition.
After due proceedings in the lower court, judgment was ultimately rendered in favor of plaintiff and against the defendants for workmen's compensation at the rate of $35 per week not to exceed 400 weeks, with legal interest on all past-due payments, plus medical expenses; the judgment allowed Drs. LaBorde and Anderson each $50 as an expert witness' fee, and further granted plaintiff's attorney a fee of $500 to be paid by defendants.
From said judgment this appeal was taken by the defendants. Plaintiff has answered thereto praying that the judgment be amended in several respects; the contents of the answer to the appeal will be hereinafter set forth and discussed.
It is conceded plaintiff's employment was hazardous and he comes within the purview of the compensation statute, and defendants also admit if compensation is due plaintiff, it should be at the rate of $35 per week.
Plaintiff has abandoned any contention that the injury to his ankle on August 22, 1957, caused disability and that feature of his demand is not an issue in the case.
With reference to the assault and battery perpetrated upon plaintiff by the co-worker, the evidence shows that it took place during the scope and course of the employment and without provocation on plaintiff's part, and such is to be deemed an "accident" within the compensation statute, and if plaintiff suffered any disability therefrom, he is entitled to recover workmen's compensation from the employer. See 112 A.L.R. p. 1258; Livingston v. Henry & Hall, La.App., 59 So.2d 892; Cater v. Travelers Insurance Co., La.App., 83 So.2d 514; Landry v. Gilger Drilling Co., La. App., 92 So.2d 482; Keyhea v. Woodard-Walker Lumber Co., Inc., La.App., 147 So. 830; and LSA-R.S. 23:1081.
As to disability vel non, there is sharp disagreement between counsel. The blow to plaintiff's face was struck with much force. Plaintiff states he consulted Dr. Harry Zoller, but this physician was not called as a witness and what his diagnosis of the injuries was we have no way of knowing. Sometime in September 1957, plaintiff, seeking medical attention, went to the Mercy Hospital in New Orleans and was there recommended to Dr. Dennis A. Casey, an ear, nose and throat specialist, who saw him on September 13, 1957, which was about a month after the accident. Dr. Casey testified that he could not say from his examination when plaintiff received the injuries, nor did he know whether there had been any recent fractures of the nose. The only thing Dr. Casey could tell was that the patient had sustained an injury which completely occluded (closed) both nostrils inhibiting breathing via the nose. He performed an operation a few days later to correct an S-shaped deformity in the nasal passages and saw plaintiff several times thereafter, the last time being on December 27, 1957, but he could not testify whether the operation was successful as he *866 had not seen plaintiff for such a long time, but that on plaintiff's last visit to him his condition appeared satisfactory. Dr. Casey stated that the purpose of the operation was to give plaintiff airway to breath through.
At the time the trial was held below plaintiff was in charge of Dr. Jack R. Anderson, also a specialist in the ear, nose and throat field. He testified he saw plaintiff first on August 8, 1958, and the important aspect of his finding is that the upper lateral cartilages of the nose did not move with the usual mobility and there was some dryness and thickening of the lining and atrophy of the membranes and much thick mucous in the nose. Dr. Anderson thought plaintiff was "getting too much air," had a nasal drip with thick discharge, and recommended an operation for the purpose of narrowing the size of the air passages.
Dr. F. E. LeJeune, specializing in ear, nose and throat, states that he examined plaintiff on February 16, but failed to give the year, and his over-all belief was that there is nothing wrong with plaintiff, and he disagrees with Dr. Anderson, emphatically stating that he did not think plaintiff was getting too much air.
Broussard states, and his testimony is uncontradicted, that about 80 per cent of the likely purchasers of used automobiles must be contacted after 6 o'clock in the evening because they are at work during daytime hours. He claims, and with apparent sincerity, that he cannot work in the night air because he takes in too much air, superinducing a cough, and experiences a draining from the nose into the throat and then into his stomach, which condition sometimes causes nausea. According to plaintiff, his experiences on rainy days are exactly the same. He explained that he had to confine his activities as a salesman to clear days and daytime hours; otherwise, he undergoes the aforesaid discomfort.
Dr. Casey was asked whether he thought the night air could affect plaintiff and the doctor answered that when he last saw him he thought plaintiff could return to work, but he had no way of knowing how the night air would affect him. Dr. Anderson was not asked what he thought of plaintiff's ability to work at night. However, he did not believe he was disabled, but stated that while disability was absent, plaintiff's condition was very aggravating. To quote Dr. Anderson's exact words:
"It's according to what this man wants to put up with. If he is satisfied with his condition, he can go through the rest of his life with it. It's not going to kill him but, on the other hand, I've already told you it was aggravating condition. If he's type of individual who doesn't want to have aggravation all the time, then he will seek relief."
Considering the testimony of plaintiff and the medical experts, we are inclined to the belief that it is true plaintiff in his present condition cannot work without discomfort in the night air or on rainy days. The testimony of Dr. Anderson that plaintiff's condition is "aggravating" lends corroboration to plaintiff's statements of the discomfort he suffers. There is no doubt plaintiff's condition stems from the blow to his face, as he states he never experienced any other injury to the nose. Defendants contend if plaintiff is troubled by the night air, such results from a nasal allergy which he has had for many years. It was shown that before his injury plaintiff had a habit of spitting frequently and that on one occasion plaintiff stated he intended to have his nose operated on. It may be that plaintiff had trouble before the accident, but whatever it was, it did not prevent plaintiff from carrying on the work at nighttime, but his present condition does. We believe it clearly appears that the physical condition he is now in is far worse than any previous condition. The best we can say for defendants is that the injury aggravated or enlarged a previous nasal ailment, which, if true, is nonetheless compensable under the jurisprudence. Robichaux *867 v. Realty Operators, Inc., 195 La. 70, 196 So. 23, and cases therein cited. The court should not attempt to distinguish between what part of the disability was caused by the injury and that which is attributable to disease. McPherson v. Hillyer Deutsch-Edwards, Inc., La.App., 143 So. 89; Henderson v. Louisiana Power Co., 9 La.App. 475, 121 So. 217.
Whereas plaintiff cannot carry on a material portion of his trade or occupation or work, i. e., working in the nighttime, without suffering pain or discomfort, under the doctrine enunciated by the Supreme Court in Brannon v. Zurich General Accident & Liability Ins. Co., 224 La. 161, 69 So.2d 1, 3, he must be declared a workman who is totally and permanently disabled from doing work of any reasonable character and he is a fit subject for workmen's compensation for such disability. The evidence in the Brannon case showed that plaintiff, a carpenter, suffered pain on kneeling and could not with sure-footedness climb ladders or walk on narrow joists, thus being unable to do a substantial part of his occupational duties. The Court said:
"In the light of the facts in the instant case the plaintiff is, in our opinion, permanently and totally disabled within the meaning and contemplation of this law. The law does not expect, and it does not contemplate, that a worker, in order to make a living, must work in pain, or that he do so when it will materially increase not only the hazards to his own health and safety, but also to those of his fellow employees. This is the settled jurisprudence of all of the appellate courts of this state. * * *" (Many cases cited.)
We followed the doctrine of the Brannon case in Pohl v. American Bridge Division United States Steel Corp., La.App., 109 So. 2d 823, 828 (certiorari denied), in which an iron worker at ground level could not perform his duties aloft, and we said "therefore he can not perform a substantial part thereof." This court also adhered to the rationale of the Brannon case in Livaccari v. Fidelity & Casualty Co. of New York, La.App., 118 So.2d 275 (certiorari denied), wherein we held that whereas a pipefitter's ability to work was impaired by injury to his knee causing him to work in pain and rendering him incapable of doing certain phases of his trade which he formerly performed, he was totally and permanently disabled.
We think that the plaintiff in the instant case is in legal contemplation situated no differently from the workmen in the Brannon, Pohl and Livaccari cases.
Of course the compensation award to the plaintiff herein is predicated in a large measure on his testimony, but our jurisprudence is perfectly clear and to the effect that an accident or injury in a compensation case may be established by the testimony of the claimant alone if there are corroborating circumstances. As aforestated, we think Dr. Anderson's testimony in a large measure can be taken as being in corroboration with what plaintiff testified to with reference to disability to do night work. See Dolhonde v. Gullett Gin Co., La.App., 25 So.2d 104; Johnson v. Brown Paper Mill Co., Inc., La.App., 35 So.2d 774; Franks v. Department of Highways for Louisiana, La.App., 43 So.2d 491; Sims v. Brown Paper Industries, Inc., La.App., 55 So.2d 311; Johnson v. Andrus, La.App., 56 So.2d 257; Zito v. Standard Accident Insurance Co., La.App., 76 So.2d 25; Touchet v. Coal Operators Casualty Co., La.App., 79 So.2d 644; Roy v. Guillot, La.App., 84 So.2d 469; Roy v. Manufacturers Casualty Insurance Co., La.App., 87 So.2d 327.
Plaintiff worked for Dumas Chevrolet Company as a used car salesman between the date of the accident and the date of the operation, September 15, 1957, and between October 10 and December 10, 1957, also between March 1958 and September 1958, which, according to the best calculation we can make, aggregates 40 *868 weeks, and as against the judgment for plaintiff, the defendants are entitled to a credit in compensation for said period. Plaintiff would not be entitled to any compensation for the number of weeks he worked at regular wages and in his same capacity after the accident as an employee of defendant employer.
In his answer to the appeal plaintiff prays that the judgment be amended so as to set forth the amount of medical expenses expended by him for which the defendants are liable. The judgment runs in plaintiff's favor for "medical expenses incurred" but does not state the amount thereof. According to the record, plaintiff is entitled to recover the sum of $335.05 for medical expenses. We will not allow the $15 optometrist's fee and the $19.39 incurred as cost of eyeglasses, as we are certain there is no causal connection between the accident and the defects in plaintiff's eyesight. Dr. LaBorde testified that plaintiff is color blind and the glasses were prescribed because of changes in the eyes due to his increasing age.
Plaintiff also prays that the judgment be amended so as to reserve his right to recover the cost of any future operation and hospital expenses in connection therewith which may be required as a result of his injury. Whereas no allowance can be made for any future medical expenses because nowhere in the Workmen's Compensation Statute is it provided that an allowance may be made to the injured workman for future medical expenses (see Livaccari v. Fidelity & Casualty Co. of New York, supra), we think the reservation prayed for is in order.
The trial judge awarded Dr. LaBorde, the optometrist, an expert's fee of $50, but this fee should not have been allowed for the reason Dr. LaBorde testified not as an expert, but only as to his diagnosis of the defects in plaintiff's vision. Moreover, his testimony had no bearing whatever on any phase of the injuries which might have been caused by the accident.
Appellee also prays that the expert witness' fee allowed Dr. Anderson be increased from $50 to $100, which increase we think in order in line with the custom prevailing. See Livaccari v. Fidelity & Casualty Co. of New York, supra. He also prays for an allowance of $100 each to Dr. Casey and Dr. Bowie as their expert's fee. Dr. Casey was the attending physician and outlined his course of treatment, but both counsel propounded questions which would place much of his testimony in the category of that of an expert and he appeared as such, so he is entitled to a fee as an expert. A physician will be compensated as an expert witness, notwithstanding part of his testimony covers his personal attendance upon plaintiff, when he is called upon by both sides and the court to express expert opinion. Attrep v. Horecky, La.App., 177 So. 379. Dr. Bowie is not entitled to any expert's fee for the reason he, as an X-ray roentgenologist, only stated what was his interpretation of his X-rays of the plaintiff's nose. He gave no testimony in reality necessary as elucidating some technical or scientific subject and was not placed on the stand for such purpose. See Cutitto v. Metropolitan Life Ins. Co., La.App., 172 So. 812.
Plaintiff also prayed that the judgment against the insurer provide for a 12% penalty under LSA-R.S. 22:658, as amended, on the compensation due contending that the withholding of medical expenses and compensation by the defendant insurer was arbitrary, capricious and without probable cause, and that the penalty should be assessed on and bear against the full 400 weeks of compensation, same to be paid by the said defendant in a lump sum. We agree that the denial of medical expenses and the nonpayment of the compensation as it accrued were done in an arbitrary and capricious manner and without probable cause, for the record clearly shows that the claim representative of Royal Indemnity Company was duly notified of the accident and of plaintiff's medical treatment and disability, but he took the unwarranted *869 position that there was no liability on the part of his company for the assigned reason that the affair between plaintiff and Slay was a personal matter and that his company was uninterested in the outcome thereof. In disavowing the claim the insurer unfortunately took a calculated risk with reference to statutory penalties. See Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695; Fruge v. Pacific Employers Insurance Co., 226 La. 530, 76 So.2d 719; Seal v. Lionel F. Favret Co., Inc., 238 La. 60, 113 So.2d 468; Patterson v. Cargo Services, Inc., La.App., 95 So.2d 49.
We think that the 12% penalty is proper under the circumstances, but we do not agree the assessment should be against the total amount of compensation awarded plaintiff. The pertinent part of LSA-R.S. 22:658, as amended, reads thus:
"* * * Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss, * * *."
This certainly does not mean that the penalty should bear against the total amount of the compensation award but only against the amount of the "loss" which the Supreme Court in two cases considered was the weekly compensation payments "which are now due" and "on all such payments which might become 60 days overdue in the future." See the decrees in Wright v. National Surety Corp., supra [221 La. 486, 59 So.2d 599] and Seal v. Lionel F. Favret Co., Inc., supra; also the per curiam in Harper v. Crescent Drilling Co., Inc., La.App., 107 So.2d 553 (556).
The increase in the amount of the "reasonable attorney's fees" allowed should be granted and the fee of plaintiff's attorney is now fixed at the sum of $1,900 as prayed for.
In view of the above, the judgment appealed from must be recast, therefore,
It is ordered, adjudged and decreed that the judgment appealed from be amended and recast so as to provide that plaintiff have judgment against Dumas Chevrolet Company and Royal Indemnity Company, in solido, for workmen's compensation at the rate of $35 per week not to exceed a period of 400 weeks (subject to a credit of 40 weeks), with legal interest on all past due weekly installments from due date until paid and a 12% penalty against the insurer, Royal Indemnity Company, on all weekly compensation payments which are now due, with a like penalty on all such payments which might become 60 days overdue in the future, together with an attorney's fee of $1,900;
That said judgment further provide that the defendants, in solido, be cast for plaintiff's medical expenses aggregating $335.05, with legal interest from judicial demand until paid, and reserving unto plaintiff his right to judicially claim from defendants any future medical expenses incurred by him on account of his injuries; that the expert witness' fee of Dr. Jack R. Anderson and of Dr. Dennis A. Casey be fixed at $100 to each; that defendants pay all costs of the suit.
And as thus recast and amended, the judgment appealed from is affirmed.
Reversed in part; affirmed in part; amended and rendered.