124 So.2d 621 (1960)
Paul L. COSTANZO, Plaintiff and Appellant,
v.
SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY et al., Defendants and Appellees.
No. 129.
Court of Appeal of Louisiana, Third Circuit.
November 17, 1960.
Rehearing Denied December 14, 1960.
Certiorari Denied February 3, 1961.
Ben C. Bennett, Jr., Marksville, for plaintiff-appellant.
Dubuisson & Dubuisson, Opelousas, for defendants-appellees.
Before TATE, SAVOY and CULPEPPER, JJ.
CULPEPPER, Judge.
This is a suit for workmen's compensation benefits brought by Paul L. Costanzo against his alleged employer, Louis Fontenot, *622 and Southern Farm Bureau Casualty Insurance Company, as Fontenot's insurer. From an adverse judgment in the lower court, plaintiff has taken this appeal.
Plaintiff alleges that on May 5, 1956, he was employed by Louis Fontenot as a farm hand, and in the process of moving a small building used as a crib, he suffered a back injury while shoveling dirt. The evidence introduced during the trial of the case shows that Louis Fontenot is the owner of a large farm containing approximately 4,000 acres of land in Avoyelles Parish. During the year 1956 Fontenot leased approximately 500 acres of this land to the plaintiff and Reven L. Fontenot, who are the son-in-law and the son respectively of Louis Fontenot, for the purpose of raising rice and cotton at an agreed rental of one-third of the proceeds of the crop for that year. The plaintiff and his wife, a daughter of the defendant, lived on defendant's farm in a house furnished by defendant. When the plaintiff and his brother-in-law, Reven L. Fontenot, were not working their own crop, they worked for Mr. Louis Fontenot, who operated a cattle farm on the rest of his land, for a wage of 75 cents per hour. Mr. Louis Fontenot owned approximately 500 head of cattle and in connection with the operation of this business he used tractors, mowing machines, bulldozers and other types of farm machinery and equipment, which both the plaintiff and Reven L. Fontenot operated.
The first contention of the defendant is that plaintiff has failed to sustain his burden of proving that he was in the employment of Louis Fontenot when he was moving the barn in question. Both the plaintiff and Reven L. Fontenot testified that on May 5, 1956, they were working for Mr. Louis Fontenot moving a small crib, measuring 12 by 16 feet, from a pasture to a location near the house occupied by plaintiff. The plaintiff testified that after the crib was set up he was leveling off the ground at the new location and he grabbed a shovel load of dirt and "* * * then I slinged it over and I stayed there. I didn't straighten out." At the time of the accident no one was working with the plaintiff, but his wife testified that she was in the house nearby and saw plaintiff at the time he was hurt. Louis Fontenot did not appear as a witness in this case, but the plaintiff and his wife and brother-in-law, Reven L. Fontenot, testified that when they were moving this barn they were working for Mr. Louis Fontenot at the usual wage of 75 cents per hour, which they received when they worked on Mr. Fontenot's cattle farm. No written record of this payment was produced in evidence, it appearing from the testimony in the record that Louis Fontenot always paid the plaintiff and the other labor on his place in cash. The defendant argues that it is not sufficient for the plaintiff to prove this element of his case simply by the testimony of himself, his wife and his brother-in-law. It is our opinion that this uncontradicted testimony and the undisputed evidence that plaintiff and Reven L. Fontenot had frequently worked for Louis Fontenot on his cattle farm, that this particular crib belonged to the defendant, Louis Fontenot, and that it was moved from one location to another on defendant's land, establishes by a sufficient preponderance of the evidence that at the time of the alleged injury the plaintiff was in the employment of Louis Fontenot. Our appellate courts have held on several occasions that an accident can be proved by the claimant alone if there are other corroborating witnesses or circumstances. Johnson v. Andrus, 56 So.2d 257; Roy v. Guillot, 84 So.2d 469.
Next, the defendant contends that even if the plaintiff was working for Louis Fontenot he was not, at the time of the accident, engaged in the hazardous features of defendant's business of running this large cattle farm. The defendant argued strenuously that this case does not fall within the doctrine originally enunciated in Byas v. Hotel Bentley, 157 La. 1030, 103 So. 303, to the effect that where an employee is required to discharge both hazardous and nonhazardous duties it is immaterial that his *623 injury occurred while he was engaged in nonhazardous work. This doctrine was applied to a farm laborer in Collins v. Spielman, 1942, 200 La. 586, 8 So.2d 608. The defendant contends that plaintiff was not a regular employee such as the one involved in Byas v. Hotel Bentley, supra, and argues in effect that every time plaintiff left his own rice farming and went over to work for Louis Fontenot, a new, separate and distinct contract of employment was created. Defendant apparently admits that on those occasions when the plaintiff drove a tractor or operated other mechanical equipment on the Louis Fontenot cattle farm, he was involved in the hazardous features of the business, but argues that on this particular occasion when he was moving a crib he was not involved in any of the hazardous features of Mr. Fontenot's cattle raising business and consequently was not covered by the Workmen's Compensation Act, LSA-R.S. 23:1021 et seq. The defendant contends that the present case can be compared to a factual situation where an employer in the farming business might hire a man for one day to drive a tractor and then six months later hire the same man to repair the fences, in which latter employment he would not be covered by the Workmen's Compensation Act. The obvious answer to this argument is that under the facts of this case the plaintiff was a fairly regular employee of the defendant. The evidence is clear that when the plaintiff and his brother-in-law, Reven L. Fontenot, were not engaged in their own rice and cotton farming operations they worked for Mr. Louis Fontenot for 75 cents per hour under a continuing agreement to this effect. The type of work which they performed each time was determined by Louis Fontenot, who paid them. There is no evidence in the record to the contrary.
In the case of Norris v. Hargis, 77 So.2d 60, 61, our brothers of the Second Circuit Court of Appeal considered a very similar factual situation where a share cropper, when not otherwise engaged in making his crop, was employed as a day laborer performing various functions about the farm of the defendant, including driving a tractor and other motorized equipment, at a daily wage of $3. Norris was injured one day while cleaning out a barn for the defendant and the court, in finding the plaintiff covered by the Workmen's Compensation Act, enunciated the following principles of law which are applicable to the present case:
"The first contention of the defense can not be sustained. It is well settled in our jurisprudence that although a business is not specifically designated as hazardous in the Workmen's Compensation Act, it becomes hazardous if motor vehicles or other mechanical equipment are used in connection with its operations. Thus, in Speed v. Page, La.App.1952, 59 So.2d 138, affirmed 222 La. 529, 62 So.2d 824, it was held that the provisions of the Act were intended to protect an employee when he is engaged in employment with reference to, in connection with, incident to, or in promotion of, his employer's trade, business or occupation, and it was not intended that the employee's right of recovery be restricted to those instances in which injury was sustained in the performance of the regular course of the employer's business, trade or occupation. See also: Collins vs. Spielman, 1942, 200 La. 586, 8 So.2d 608; Griffin vs. Catherine Sugar Company, Inc., 1951, 219 La. 846, 54 So.2d 121; Troquille vs. Lacaze's Estate, La.App.1952, 59 So.2d 505. From the foregoing authorities we find that plaintiff's accident occurred within the scope of the Workmen's Compensation Act."
The final issue for determination by the Court is whether the plaintiff is permanently and totally disabled within the meaning of the workmen's compensation law.
Plaintiff testified that immediately after the accident he couldn't straighten up and that he went on in his house and *624 told his wife about his injury. He slept at home that night and the next morning plaintiff still could not straighten up so they called Dr. Beridon, a general practitioner, who examined the plaintiff and referred him to Dr. Kingsley, an orthopedic specialist of Alexandria, Louisiana, who saw plaintiff that same day, Sunday, May 6, 1956. Dr. Kingsley immediately placed plaintiff in a hospital in Alexandria, and his examination, including a myelogram which was done on May 8, 1956, indicated a possible herniated disc at L5. Traction and conservative treatment did not give plaintiff any relief from the severe pain which he was experiencing and consequently plaintiff was taken into surgery on May 12, 1956, where Dr. Kingsley removed a "bulging degenerated left L5 disc". The vertebrae were not fused.
Plaintiff was discharged from the hospital on May 19, 1956, and returned to his home. He continued to make office visits to Dr. Kingsley during 1956 and 1957 and was last seen by Dr. Kingsley on June 20, 1958. All during this period of treatment by Dr. Kingsley and up until the date of the trial of this case, the plaintiff has continued to complain of intermittent pain in his back. Plaintiff has gone back to most of his normal routine work on the farm, such as driving a tractor, lifting sacks of fertilizer and doing other manual labor, but he testified that many times he does so in pain and that if he tries to do hard physical labor for a full working day, his back begins to hurt him and he then will have to be careful of his activity for the next few days. Plaintiff's testimony in this respect is corroborated by the lay witnesses, Reven L. Fontenot and by plaintiff's wife. Plaintiff's testimony is also strongly corroborated by Dr. Kingsley, who was the only expert medical witness in this case. Dr. Kingsley is definitely of the opinion that the plaintiff still does not have a normal back and that he still cannot return to a full day of hard physical farm labor without experiencing substantial pain. We find Dr. Kingsley testified as follows:
"Q. Now, doctor, actually what we have here is a question of man who is claiming that he cannot work. Assuming that there have been pictures made of him working and doing heavy manual labor, assuming that, wouldn't it be logical to conclude that this man, if he does have pain, has pain only occasionally? A. That is my own impression. He made a statement to me himself, for example, that I quote here: In a two week period not long after his operation he had pains for only fifteen minutes or for five minutes and he definitely does hard laboring work. Those are his statements. But when he persisted in it for over a few hours and tries to do a whole day's work it is my understanding that he then pays for it that night and the next day or two. I have seen him on several occasions when the findings which I have mentioned as objective ones have persisted after such efforts.
* * * * * *
"I think this man definitely has a neuritis when he strains himself. I think that the neuritis is not due to more disc but is a result of the original hemangioma and injury which he had there, allowing the bulging of the disc, and he has adhesions of a nature which allow some activity, and even heavy activity, but at the end of a persistent period of heavy activity the evidence is that he is not the way he ought to be. Now at first I felt that no more should be done and I still make the statement that even with a spine fusion I can't guarantee that he will be any better, but he is relatively young, and if he's going to go on like this then I think he has little to lose. I don't think I'll make him any worse. I don't know that I'd make him any better."
The plaintiff, his wife, his brother-in-law, Reven L. Fontenot, and one of his *625 Negro employees, Willey Riley, all testified that plaintiff could not do a full day's hard physical labor on the farm without experiencing pain, both on that day and for several days thereafter. This lay testimony is strongly corroborated by Dr. Kingsley. The portions of his testimony quoted above indicate clearly his opinion that although the plaintiff has reached the maximum degree of recovery, he does not have a normal back and cannot without substantial pain perform hard physical labor for a full day. In an effort to destroy the effect of this testimony, the defendant has introduced in evidence the testimony of two detectives, whom defendant hired to watch the plaintiff and take motion pictures of him. On April 7, 1958, these two detectives went to the farm of the plaintiff and, posing as newsmen who were interested in gathering material for a magazine, took approximately thirty minutes of moving pictures of the plaintiff while he and Reven L. Fontenot and two colored employees were changing the heavy waterfilled tubes and tires on a tractor. These pictures and the testimony of the two detectives show that on this occasion the plaintiff was assisting in changing the tractor tires and that he helped to lift one of the heavy tubes filled with water and that he drove the tractor. Of course, there is other evidence in the record to show, as the plaintiff does not deny, that he can and does still perform many of his duties about the farm involving physical labor; but this does not in any way lessen the effect of plaintiff's evidence that he is permanently disabled from doing a full day's hard physical labor on the farm without substantial pain and discomfort. The only expert medical witness who testified in this case clearly expressed this opinion. These pictures covering approximately thirty minutes of a total of three and one-half hours of activity by the plaintiff were, of course, taken at intervals and do not reflect all of the activities of the plaintiff. In the recent case of Gagliano v. Boh Bros. Const. Co., La.App., 44 So.2d 732, 735, the court made the following comment about very similar moving pictures:
"Objection was made by plaintiff's counsel, in the court below, to the admission of the pictures as evidence, but we do not deem it necessary to comment or pass upon the objection. Suffice it to say that whereas the motion pictures were taken at intervals, they lose much of their potency, as we believe a spirit of fair play dictates that when such pictures are made to be used in a case such as this, they should reflect all activities of the subject of the pictures, and not merely snatches or fragments taken over the four hour interval."
The rule is well settled in Louisiana that when an employee cannot perform his customary and usual duties without suffering substantial pain and discomfort he is considered totally and permanently disabled. Yarbrough v. Great American Indemnity Co., La.App., 159 So. 438; Stieffel v. Valentine Sugars, Inc., 188 La. 1091, 179 So. 6; Lee v. International Paper Co., La.App., 16 So.2d 679; Stansbury v. National Automobile & Casualty Ins. Co., La.App., 52 So. 2d 300.
For the reasons hereinabove set forth, the judgment from which this appeal was taken is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Paul L. Costanzo, and against the defendants, Louis Fontenot and Southern Farm Bureau Casualty Insurance Company, in solido, for workmen's compensation benefits at the rate of $23.40 per week, beginning May 5, 1956, and continuing for the duration of disability, not to exceed 400 weeks, as for total and permanent disability, with interest at the rate of five per cent per annum on each past-due payment from its due date until paid. It is further ordered, adjudged and decreed that there be judgment in favor of the plaintiff and against the said defendants, in solido, for all medical and incidental expenses up to *626 the maximum of $1,000, with interest thereon at the rate of five per cent per annum from date of judicial demand until paid. Appropriate credit must be given the defendants for any weekly compensation payments or medical expense previously paid by the defendants, or either of them. Attorneys' fees for plaintiff's attorney are fixed in a sum not in excess of twenty per cent of this award, provided that the maximum attorneys' fees shall not exceed $1,000. Defendants are cast for all costs of this proceeding incurred in the lower court, as well as the cost incident to this appeal.
Reversed.