JOHNSON, Judge.
The defendants appealed from the judgment of the Civil District Court for the Parish of Orleans, awarding the plaintiff maximum compensation for total permanent disability.
The plaintiff had been employed by Falstaff Brewing Corporation for about thirteen years. He had been assigned to various jobs from time to time, but his regular job was termed relief man in the warehouse. Warehouse work was commonly referred to as the “rock pile.” The duties of the relief man were to work in the place of any of the warehouse employees who needed to be absent from the job for short duration, vacation or otherwise. When there was no occasion to relieve someone in the warehouse the plaintiff would do any other job by assignment, such as clean up the floors, handle empty cases, inspect containers. The work on the “rock pile” in the warehouse was heavy labor. This work necessitated the handling by one man of crates of full beer containers, which weighed about forty-seven or forty-eight pounds.
On the night of November 10, 1958, the plaintiff went to the warehouse to relieve an employee named R. J. Blanchard. Plaintiff testified that while Blanchard was away from the warehouse on his relief, and while other warehousemen, Clarence Jeanfreau and C. D. Powell, were outside the warehouse, he stooped to handle a full case of beer, his back “suddenly grabbed,” and the pain was so severe he fell to his knees. He was alone at that time. When Blanchard returned he told Blanchard about it. The plaintiff said he had only one more relief to do that night and he felt he could do it as it was only a short time before the end of the work shift. He then went to relieve one of the other men, and told Jeanfreou and Powell about what happened. They asked him what he was going to do, and he told them that if it was not better the next day he was going to see the doctor. He said he also told the night superintendent that he was going to the doctor the next day. Pie did go to see Dr. Leon and while at the doctor’s office the next day he called the Falstaff office (he thinks he talked to a Mr. Abadie), and told him where he was and why he was there and that he could not come to work.
R. J. Blanchard gave the insurance adjuster a written statement shortly after that date, in which Blanchard is quoted as saying that plaintiff did not report the accident to him. However, Blanchard testi- *254 ficd in Court that plaintiff did tell him about what happened that night when he returned to resume work. Jeanfreau and Powell also acknowledged that plaintiff complained to them about hurting his back. Blanchard’s affirmative testimony under oath must be considered over his negative statement to the insurance adjuster.
Plaintiff said he was no better the next day and went to see Dr. Leon, from whom he took treatment daily until December 8, at Touro Infirmary. Dr. Leon examined him again and recommended that he return to light work. In addition to the treatment Dr. Leon prescribed a corset, which plaintiff said he has worn continuously since that time.
Plaintiff went back to work on December 9, 1958. He said he started to work in the warehouse but was unable to handle the filled cases, because it aggravated the pain in his back so much that he could not endure it. There are a number of jobs around the brewery to which plaintiff had been assigned at different times, but he said that for a period of about two years up to the time of the accident he worked almost entirely as the warehouse relief man which required lifting, carrying, handling full cases or crates of beer containers. Plaintiff said he had to work and he couldn’t afford to take any more time off, because supporting his family came first. Not being able to perform the work in the warehouse because of the pain in his back, he asked Anthony Hebert to swap jobs with him. Hebert was then inspecting empty cases and cleaning up. This work did not entail heavy labor. Hebert testified that they got permission from the night superintendent to swap jobs, and thereafter plaintiff did Hebert’s light work and Hebert went to the warehouse. The evidence shows that plaintiff continued to do the lighter job from then until Friday night before, the day of the trial of this case. On that Friday plaintiff and some other employees, because of a cut back in production, were laid off.
The night superintendent referred to was not called as a witness by defendants, and actually there was no attempt made by defendants to discredit any of the salient facts recited above, except by medical testimony on the question of plaintiff’s disability. Defendants did question Falstaff’s personnel manager to show that all of the jobs performed by various employees in the department in which plaintiff, Blanchard, Jean-freau, Powell and Hebert, worked drew the same pay, with an increase of ten cents an hour for those on the night shift,
We, therefore, conclude that there is sufficient corroboration of plaintiff’s individual testimony to establish the occurrence of an accident and injury on November 10, 1958. France v. City of New Orleans, La.App., 92 So.2d 473; Broussard v. Dumas Chevrolet Company, La.App., 120 So.2d 863, and authorities cited at page 867.
On the question of this plaintiff’s disability, if any, the plaintiff testified that about three weeks before November 10, 1958, he felt some pain in his back on occasions, but it was not severe and was not disabling until the sudden attack on the above date when he was carrying the cases of full beer containers, and that he has not been able since to perform his regular work in the warehouse without extreme pain.
Dr. Leon examined plaintiff the next day after the accident. Dr. Leon is a general surgeon and saw plaintiff after November 11a number of times. He found tenderness over the fifth lumbar vertebra to the right of the middle of the back, with muscle spasm and limited motion in both flexion and extension of ttie back. X-rays were made and disclosed a congenital sacralization of the fifth lumbar vertebra with the sacrum. That deformity did not contribute to plaintiff’s trouble. Dr. Leon diagnosed plaintiff’s condition as lumbosacral sprain. He prescribed a narcotic for pain, a back brace and physiotherapy treatments. On December 8, this doctor found full range *255 of motion, no tenderness, no muscle spasm and recommended that plaintiff return to light work on “November” 9th and to full work on December 22nd. The date “November” 9th is evidently a typographical error and should have been written December 9th. Dr. Leon did not see the plaintiff any more. The doctor made his report to defendant, Hartford Accident and Indemnity Company, and that company paid his bill. He was called as a defense witness.
Dr. Salatich, an orthopedic surgeon, saw the plaintiff the first time on February 19, 1959. Dr. Salatich found painful tightening of muscle, loss of flexibility of the lum-bosacral movements, tenderness to the right of the middle of the back over the lumbo-sacral junction, and said the plaintiff complained of numbness in the right leg. This doctor thought he may have an interverte-bral disc involvement related to the accident of November 10th. Dr. Salatich was of the opinion that plaintiff needed treatment and he strongly advised that plaintiff refrain from demanding physical activities and particularly thought he could not perform labor safely and without pain. Plaintiff was re-examined by this doctor on October 20, 1960, when plaintiff was given another complete orthopedic examination. On this occasion the doctor said his original findings were still present with a greater degree of loss of sensation of the skin, which indicated the presence of nerve root compression, all of which the doctor thought would not clear up, and had at that time reached a chronic stage. This doctor advised against heavy lifting, stooping, bending or any act that would continually aggravate plaintiff’s pain in the lower back. The doctor referred plaintiff to Dr. Garcia-Oller for a neurological examination.
Dr. Garcia-Oller is a specialist in neurological surgery, who testified that he examined the plaintiff on November 7, 1960, and found weakness in the muscles of the right leg, that normal back bending produced complaint of pain. He also found tenderness between the last bone of the spine and the sacrum, which he said is common with low back complaints, and it was the doctor’s opinion, the accident having occurred two years previously, that the condition is permanent and that plaintiff is incapacitated for heavy labor. He thought the plaintiff had nerve root injury, with possible rupture of one of the discs in that locality.
Dr. Redler, an orthopedic surgeon, saw the plaintiff in October 1960, for defendants. He put plaintiff through the usual orthopedic tests and his finding was negative in all respects, except he did find an area about three inches in diameter of loss of sensation to pin pricks on the front of the lower third of the right thigh, for which the doctor could give no explanation. Dr. Redler made X-rays which to him did not reveal the sacralization about which all the other doctors testified. This doctor thought the plaintiff was able to work.
Dr. Richard Levy, neurosurgeon, saw plaintiff in January, 1961, for defendants. Plaintiff complained to him of pain and tenderness in the lower back. He found a stocking type loss of sensation in the right leg, extending from the groin to the toes, which the doctor felt could not be attributed to the injury of the plaintiff’s low lumbar segment. Dr. Levy concluded that plaintiff had sustained a low back injury by the accident of November, 1958, and he recommended that plaintiff continue wearing the corset if he found it gave him some relief.
The finding of the trial Court that plaintiff was totally and permanently disabled by the accident of November 10th, 1958, is correct.
The defendants paid compensation amounting to $145.00, and asked that in event judgment is for plaintiff, that defendants, in lieu of further payments, be allowed maximum compensation credit for whatever time defendant has worked for Falstaff Brewing Company after the accident. Al *256 so, in that event, defense counsel asks that this case be remanded in order to determine that time. It is true that before the accident, in the thirteen years plaintiff has worked for Falstaff, he was assigned at different times to various jobs, but it is our appraisal of the testimony that at least for a year or more immediately prior to the accident plaintiff’s major work was relief-man in the warehouse, requiring hard labor. After the accident plaintiff found he could not do that 'work without severe pain. In order to be able to keep working at something which caused less pain he requested Hebert to swap jobs with him, the work of Hebert being much lighter and causing less pain. We are compelled to accept the testimony of plaintiff and Hebert that this was done with the approval of the night foreman. Defendant made no effort to dispute that, and certainly the name of the foreman was available to defendants, and if that arrangement were not true he could have been called to deny it. Such approval was tantamount to a formal assignment or order that plaintiff take the lighter job because ■of his injury. While plaintiff drew the same pay as before the accident, the work itself was entirely different in nature. Though he was not performing the same ■duties for which he was employed as relief warehouseman, his work was labor in the same department, classed at the same wage rate as the rate he received as a relief warehouseman, his pay was fully earned the same as Hebert had earned it, there was no actual or implied agreement that the wage was in any part in lieu of compensation, and the pay was in no sense and no part a gratuity. The credit cannot be allowed. Madison v. The American Sugar Refining Company, La., 144 So.2d 377; France v. City of New Orleans, La.App., 92 .So.2d 473; Myers v. Jahncke Service, La.App., 76 So.2d 436; Griffin v. Liberty Mutual Insurance Company, La.App., 131 So. 2d 153; Fruge v. Hub City Iron Works, Inc., La.App., 131 So.2d 593; Walters v. General Accident & Fire Assur. Corp., Ltd., La.App., 119 So.2d 550; Mottet v. Libbey-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218; White v. Calcasieu Paper Company, La.App., 96 So.2d 621, These cases cite and discuss many others on the subject. We conclude that the final result is in accordance with the resolution of the issue under the facts of this case.
The plaintiff prayed for statutory penalties because of the alleged arbitrary refusal of defendants to pay compensation when due. The trial Court did not allow penalties. The plaintiff did not appeal from that part of the judgment and did not answer defendant’s appeal and plaintiff’s claim for the penalties cannot be reviewed. Counsel for plaintiff has apparently abandoned that part of the claim, as nothing was said about it in argument or brief.
The judgment appealed from is affirmed at the cost of defendants.
Judgment affirmed.
REGAN, J., concurs.